IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0427

_____

**FILED**
**June 4, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JOHN N. KENNEY,
Defendant Below, Petitioner

v.

SAMUEL C. LISTON,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Monongalia County
The Honorable Susan B. Tucker, Judge
Civil Action No. 11-C-102

AFFIRMED

_____

Submitted: April 9, 2014
Filed: June 4, 2014

Tiffany R. Durst, Esq.
Nathaniel D. Griffith, Esq.
Pullin, Fowler, Flanagan,
Brown & Poe, PLLC
Morgantown, West Virginia
Counsel for the Petitioner

James G. Bordas, Esq.
Scott S. Blass, Esq.
Bordas & Bordas, PLLC
Wheeling, West Virginia
Chad S. Lovejoy, Esq.
Duffield, Lovejoy, Stemple & Boggs, PLLC
Huntington, West Virginia

J. Bryan Edwards, Esq.
Paul R. Cranston, Esq.
Cranston & Edwards, PLLC
Morgantown, West Virginia
Counsel for the Respondent

Counsel for *Amicus Curiae*
West Virginia Association for Justice


JUSTICE KETCHUM delivered the Opinion of the Court.

JUSTICE BENJAMIN concurs and reserves the right to file a separate opinion.

JUSTICE LOUGHRY dissents and reserves the right to file a separate opinion.

# SYLLABUS BY THE COURT

1. "The collateral source rule excludes payments from other sources to plaintiffs from being used to reduce damage awards imposed upon culpable defendants." Syllabus Point 11, *Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435, 307 S.E.2d 603 (1983).

2. The collateral source rule protects payments made to or benefits conferred upon an injured party from sources other than the tortfeasor by denying the tortfeasor any corresponding offset or credit against the injured party's damages. Even though these collateral sources mitigate the injured party's loss, they do not reduce the tortfeasor's liability.

3. "The collateral source rule normally operates to preclude the offsetting of payments made by health and accident insurance companies or other collateral sources as against the damages claimed by the injured party." Syllabus Point 7, *Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584 (1981).

4. The rule that collateral source benefits are not subtracted from a plaintiff's recovery applies to proceeds or benefits from sources such as insurance policies, whether maintained by the plaintiff or a third party; employment benefits; services or benefits rendered gratuitously (whether free, discounted, or later written off); and social legislation benefits. The law does not differentiate between the nature of these collateral source benefits, so long as they did not come from the defendant or a person acting for the defendant.

5.     "An injured person is entitled to recover damages for reasonable and necessary nursing services rendered to him, whether such services are rendered gratuitously or paid for by another."  Syllabus Point 5, *Kretzer v. Moses Pontiac Sales*, Inc., 157 W.Va. 600, 201 S.E.2d 275 (1973).

6.     A person who has been injured by the tortious conduct of a culpable tortfeasor is entitled to recover from the tortfeasor the reasonable value of medical and nursing services necessarily required by the injury.  This recovery is for the reasonable value of the services and not for the expenditures actually made or obligations incurred.

7.     Where an injured person's health care provider agrees to reduce, discount or write off a portion of the person's medical bill, the collateral source rule permits the person to recover the entire reasonable value of the medical services necessarily required by the injury.  The tortfeasor is not entitled to receive the benefit of the reduced, discounted or written-off amount.

8.     "The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties." Syllabus Point 6, *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995)

Justice Ketchum:

In this appeal from the Circuit Court of Monongalia County, we are asked to examine a jury's award of compensatory and punitive damages in a car wreck caused by a drunk driver. The driver – the defendant – caused serious injuries to the plaintiff.

The defendant's appeal challenges the collateral source rule. The defendant's appeal also asserts that the circuit court erred in allowing certain evidence at trial and in giving a limiting instruction pertaining to the defendant's assets in the punitive damage phase of the trial.

After careful consideration of the record, oral argument, and the briefs of the parties and *amicus curiae*,[1] we affirm the jury's award of compensatory and punitive damages.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

On April 6, 2010, plaintiff Samuel C. Liston was a passenger in a vehicle sitting at a stoplight. Defendant John N. Kenney slammed his car into the rear end of the plaintiff's vehicle. The defendant did not brake before the collision, and the force of the impact broke the seat in which the plaintiff was sitting. The defendant had previously consumed a number of alcoholic beverages, and an hour after the collision his blood

---

[1] The Court acknowledges and wishes to express appreciation for the excellent *amicus curiae* brief submitted by the West Virginia Association for Justice.

1

alcohol was measured at .328, over four times the legal limit. He later pleaded no contest to first-offense driving under the influence.

The plaintiff suffered serious, permanent, painful injuries to his spine in the collision, and brought suit against the defendant for his injuries. The defendant admitted that he was solely liable for the collision, and the case was bifurcated into a two-phase damages trial. The first phase was to determine the amount of the plaintiff's compensatory damages; the second phase was to determine whether and to what extent the defendant should pay punitive damages.

As a result of the collision, the plaintiff incurred medical bills in excess of $70,000.00. West Virginia law permits a plaintiff to recover the necessary and reasonable medical expenses for an injury from a tortfeasor. Proof that a medical bill was incurred is *prima facie* evidence the expense was necessary and reasonable.[2] The plaintiff therefore sought to recover the entire billed amount as his necessary and reasonable medical expenses.

Prior to trial, the defendant filed a motion *in limine* and asserted that only a portion of each medical bill had been paid, either by the plaintiff (as co-pays or deductibles) or by the plaintiff's health insurance carrier (Blue Cross/Blue Shield). By an agreement between the plaintiff's medical providers and his health insurance carrier, the medical bills were discounted, reduced, or adjusted downward. Because of the

---

[2] *See W.Va. Code* § 57-5-4j [1981] ("Proof that medical, hospital and doctor bills were paid or incurred because of any illness, disease, or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable.").

2

agreement with the health insurance carrier, the remaining, unpaid portions of the medical bills were "written off" by the plaintiff's medical providers.

The defendant asserted that the plaintiff's damages "should be limited to the amounts actually paid by Plaintiff . . . and amounts paid on Plaintiff's behalf by any collateral source," such as the plaintiff's health insurance carrier. The defendant argued to the circuit court that the value of the medical bills before reduction was not paid by either the plaintiff or his health insurance carrier. Further, because of health insurance, the value of the medical bills was not an obligation that the plaintiff was expected to pay. The defendant contends that since the full bills were neither paid nor actually incurred by the plaintiff or the plaintiff's health insurance carrier, the plaintiff should not be allowed to introduce evidence of those written-off amounts at trial.

The circuit court denied the defendant's motion *in limine* because the discounts or write-offs were a collateral source to the plaintiff. The circuit court reasoned that under the collateral source rule, the plaintiff was entitled to recover damages for the value of any reasonable and necessary medical services he received, "whether such services are rendered gratuitously or paid for by another."[3] Further, the circuit court noted that the plaintiff was entitled to recover the value of medical services rendered to the plaintiff irrespective of "the expenditures actually made or obligations incurred."[4]

---

[3] Syllabus Point 5, *Kretzer v. Moses Pontiac Sales, Inc.*, 157 W.Va. 600, 201 S.E.2d 275 (1973).

[4] *Kretzer*, 157 W.Va. at 610, 201 S.E.2d at 281.

3

Because of the collateral source rule, and because the evidence would tend to be misleading and prejudicial, the circuit court prevented the defendant from offering any evidence that the bills for the plaintiff's medical services were either reduced by the provider or paid by the health insurer at a discounted rate.

On September 21, 2012, the jury returned a verdict in the first phase of the bifurcated trial. The jury awarded the plaintiff compensatory damages totaling $325,272.92. The verdict included $74,061.00 for the plaintiff's past medical expenses, an amount almost equal to the total amount of the plaintiff's medical bills.[5]

After receiving the jury's compensatory damage verdict, the circuit court held a punitive damage trial. Counsel for the defense told the jury in opening statement that the defendant was impoverished and unable to pay any punitive damage verdict. During plaintiff's direct examination of the defendant, plaintiff's counsel properly countered the defense's opening remarks by eliciting testimony from the defendant that he had liability insurance. On cross examination, defense counsel prompted the defendant to testify that he only had $100,000.00 in liability insurance. In response, and over an objection by defense counsel, plaintiff's counsel extracted a statement from the defendant that he knew his liability insurer might be required to pay the jury's entire verdict, even if it exceeded the defendant's $100,000.00 liability limits. The circuit court thereafter instructed the jury that additional liability insurance "may or may not" be

---

[5] At trial, the plaintiff introduced medical bills totaling $76,313.49, but it appears that the jury declined to award the plaintiff compensation for $2,252.00 in bills from a chiropractor.

4

available to pay the verdict. The jury returned a punitive damage verdict against the defendant for $300,000.00.

The circuit court entered a judgment order on the jury's verdict on October 9, 2012. The defendant filed a motion for a new trial. The circuit court denied that motion on February 26, 2013.

The defendant now appeals and asks that we vacate the circuit court's judgment order in its entirety and grant the parties a new trial. In the alternative, the defendant requests that we grant the parties a new trial solely on the issue of punitive damages.

## II.
## STANDARD OF REVIEW

The defendant appeals the circuit court's ruling denying his motion for a new trial. "As a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard."[6]

> Although the ruling of a trial court in granting or
> denying a motion for a new trial is entitled to great respect
> and weight, the trial court's ruling will be reversed on appeal
> [only] when it is clear that the trial court has acted under
> some misapprehension of the law or the evidence.[7]

---

[6] *Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995).

[7] Syllabus Point 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). *See also*, *In re State Pub. Bldg. Asbestos Litig.*, 193 W.Va. 119, 124, 454 S.E.2d 413, 418 (1994) (quoting 11 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2818 at 118 (1973) ("There are few subjects in the
(continued . . .)

5

# III.
# ANALYSIS

The defendant raises two issues of consequence.

First, the defendant argues the trial court erred in applying the collateral source rule to exclude evidence, testimony and argument relating to medical expenses that were discounted or written off by the plaintiff's medical providers. The defendant asserts he is not challenging the collateral source rule; he says he merely seeks to introduce evidence of what the plaintiff's insurer actually paid the providers as evidence of the reasonable value of the medical services.

Second, the defendant argues that the trial court erred in the punitive damage phase by allowing the jury to hear plaintiff's counsel's questions suggesting that additional coverage may be available to the defendant to pay the jury's excess verdict. Further, the defendant contends it was error for the trial court to instruct the jury that excess liability insurance coverage might be available.

## A. Collateral Source Rule

We begin with the question of whether those portions of the plaintiff's medical bills that were discounted or written off can be submitted to the jury. The defendant does not dispute that the collateral source rule protects the portions of the

---

entire field of procedure that have been subject to so much change and controversy in recent years as the proper scope of review of an order granting or denying a motion for a new trial. The trial court has very broad discretion and the appellate courts will defer a great deal to his exercise of this discretion. This much is settled.").

plaintiff's medical bills that his health insurer actually paid and that the plaintiff's health-care providers accepted as payment in full. Further, the defendant concedes that the plaintiff is entitled to recover the reasonable value of the medical services that were necessary and caused by the defendant's misconduct.

The question presented concerns how to calculate the "reasonable value" of the plaintiff's medical services in light of the collateral source rule. The defendant argues that the collateral source rule does not apply to the difference in value between the amount billed and the amount paid. The plaintiff responds that the collateral source rule protects the entire amount initially billed, so long as it was necessary and reasonable, because any discounts or written-off amounts were as a result of a collateral source: the plaintiff's health insurance. In addition, the plaintiff argues that *W.Va. Code* § 57-5-4j provides that the medical bills that he incurred are *prima facie* evidence that the amounts billed were necessary and reasonable.[8]

The collateral source rule is a long-standing principle in West Virginia law and has been "a staple of American tort law since before the Civil War."[9] "The collateral source rule excludes payments from other sources to plaintiffs from being used to reduce

---

[8] *See supra*, footnote 2.

[9] Michael I. Krauss & Jeremy Kidd, *Collateral Source and Tort's Soul*, 48 U. Louisville L. Rev. 1, 4 (2009). The collateral source rule first appeared in America in *The Propeller Monticello v. Mollison*, 58 U.S. 152 (1854). The term "collateral source" derives from language used in 1870, in *Harding v. Town of Townshend*, 43 Vt. 536, 538 (1870) ("The policy of insurance is collateral to the remedy against the defendant, and was procured solely by the plaintiff and at his expense, and to the procurement of which the defendant was in no way contributory.").

damage awards imposed upon culpable defendants."[10] The collateral source rule protects payments made to or benefits conferred upon an injured party from sources other than the tortfeasor by denying the tortfeasor any corresponding offset or credit against the injured party's damages. Even though these collateral sources mitigate the injured party's loss, they do not reduce the tortfeasor's liability.[11] The collateral source rule "operates to preclude the offsetting of payments made by health and accident insurance companies or other collateral sources as against the damages claimed by the injured party."[12]

The law is clear that, "A tort victim who has incurred medical expenses, suffered lost wages, or experienced other compensable loss, may sue the tortfeasor for the entire amount of the victim's injuries even if those losses have been neutralized by first-party insurance, by the victim's relatives, by the victim's employer, or through the

---

[10] Syllabus Point 11, *Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435, 307 S.E.2d 603 (1983).

[11] *Restatement (Second) of Torts* § 920A (1979) gives the following effect to payments made to an injured party:

> (1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.

> (2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

[12] Syllabus Point 7, *Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584 (1981).

kindness of strangers."[13]  A tortfeasor cannot take advantage of a contract or relationship "between an injured party and a third person, no matter whether the source of the funds received is an insurance company, an employer, a family member, or other source."[14]  As the *Restatement (Second) of Torts* notes,

> [Benefits from collateral sources] do not have the effect of reducing the recovery against the defendant. The injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff's injury.  But it is the position of the law that a benefit that is directed to the injured party *should not be shifted so as to become a windfall for the tortfeasor*.[15]

Stated succinctly, a person who is negligent and injures another "owes to the latter full compensation for the injury inflicted[,] . . . and payment for such injury from a collateral source in no way relieves the wrongdoer of [the] obligation."[16]

The collateral source rule is both a rule of evidence and a rule of damages.

"As a rule of evidence, [the collateral source rule] precludes the defendant in a personal injury or wrongful death case from introducing evidence that some of the

---

[13] Krauss & Kidd, 48 U. Louisville L. Rev. at 11.  *See also*, *Pack v. Van Meter*, 177 W.Va. 485, 488, 354 S.E.2d 581, 584 (1986) ("Our law is quite clear that the amount of money that an injured plaintiff receives from a collateral source is not admissible.").

[14] *Covington v. George*, 359 S.C. 100, 103-04, 597 S.E.2d 142, 144 (2004) (citation omitted).

[15] *Restatement (Second) of Torts* § 920A, cmt. b (emphasis added).

[16] *Walthew v. Davis, Adm'r*, 201 Va. 557, 563, 111 S.E.2d 784, 788 (1960).

9

plaintiff's damages have been paid by a collateral source."[17] Because the likelihood of misuse by the jury clearly outweighs the probative value of evidence of collateral benefits,[18] the "induction of collateral sources into the jury's consciousness for whatever purpose is to be avoided."[19] The theory is "that the jury may well reduce the damages based on the amounts that the plaintiff has been shown to have received from collateral sources."[20] For example, "[c]alling attention to the fact that a plaintiff had [hospitalization or medical] insurance can be prejudicial error because the jury may

---

[17] James L. Branton, *The Collateral Source Rule*, 18 St. Mary's L.J. 883 (1987). *See also*, Michael Flynn, *Private Medical Insurance and The Collateral Source Rule: A Good Bet?*, 22 Toledo L.Rev. 39, 42 (1990) ("As to evidence, it bars the submission of evidence that the injured plaintiff received payment for any part of his damages, including medical expenses, from other sources.")

[18] *Eichel v. New York Cent. R. Co.*, 375 U.S. 253, 255 (1963) ("In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension."); *Hrnjak v. Graymar, Inc.*, 4 Cal. 3d 725, 732, 484 P.2d 599, 604 (1971) ("The potentially prejudicial impact of evidence that a personal injury plaintiff received collateral insurance payments varies little from case to case.").

[19] *Ilosky v. Michelin Tire Corp.,* 172 W.Va. at 447, 307 S.E.2d at 615.

[20] *Ratlief v. Yokum*, 167 W.Va. at 787, 280 S.E.2d at 590. *See also* James M. Fischer, *Understanding Remedies* § 12(a), at 77 (1999) ("The evidentiary component bars admission of evidence of the existence of the collateral source or the receipt of benefits. The concern here is that the trier of fact may use that evidence improperly to deny the plaintiff the full recovery to which he is entitled."); *Proctor v. Castelletti*, 112 Nev. 88, 90, 911 P.2d 853, 854 (1996) (adopting a *per se* rule barring admission of collateral source payments into evidence for any purpose; "Collateral source evidence inevitably prejudices the jury because it greatly increases the likelihood that a jury will reduce a plaintiff's award of damages because it knows the plaintiff is already receiving compensation.").

10

conclude that plaintiff sustained no damages for which he was entitled to recover if his medical bills were paid by insurance."[21]

As a rule of damages, the collateral source rule "precludes the defendant from offsetting the judgment against any receipt of collateral sources by the plaintiff."[22] The "rationale for this rule is that the party at fault should not be able to minimize his damages by offsetting payments received by the injured party through his own independent arrangements"[23] "[T]he wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts or other relations that may exist between the injured party and third persons."[24]

The drafters of the *Restatement (Second) of Torts* recognized that there are four general categories of collateral benefits that should never be subtracted from the plaintiff's recovery.[25] Those four categories are:

---

[21] *Biehler v. White Metal Rolling & Stamping Corp.*, 30 Ill.App.3d 435, 444, 333 N.E.2d 716, 723 (1975).

[22] Branton, 18 St. Mary's L.J. at 883. *See also*, *Ilosky v. Michelin Tire Corp.*, 172 W.Va. at 446, 307 S.E.2d at 615 ("the collateral source rule excludes payments from other sources to plaintiffs from being used to reduce damage awards imposed upon culpable defendants."); Flynn, 22 Toledo L. Rev. at 42 ("As to damage calculations, the Rule prohibits the tortfeasor from reducing payment of a tort judgment by the amount of money received by an injured party from other sources.").

[23] *Ratlief v. Yokum*, 167 W.Va. at 787, 280 S.E.2d at 590.

[24] *Wilson v. Hoffman Grp., Inc.*, 131 Ill.2d 308, 320, 546 N.E.2d 524, 530 (1989).

[25] This list is not absolute. The drafters also said about collateral sources, "The law does not differentiate between the nature of the benefits, so long as they did not

(continued . . .)

11

(1) Insurance policies, whether maintained by the plaintiff or a third party. Sometimes, as in fire insurance or collision automobile insurance, the insurance company is subrogated to the rights of the third party. This additional reason for keeping the tortfeasor's liability alive is not necessary, however, as the rule applies to insurance not involving subrogation, such as life or health policies.[26]

(2) Employment benefits. These may be gratuitous, as in the case in which the employer, although not legally required to do so, continues to pay the employee's wages during his incapacity. They may also be benefits arising out of the employment contract or a union contract. They may be benefits arising by statute, as in worker's compensation acts or the Federal Employers' Liability Act. Statutes may subrogate the employer to the right of the employee, or create a cause of action other than by subrogation.

(3) Gratuities. This applies to cash gratuities and to the rendering of services. Thus the fact that the doctor did not charge for his services or the plaintiff was treated in a veterans hospital does not prevent his recovery for the reasonable value of the services.

(4) Social legislation benefits. Social security benefits, welfare payments, pensions under special retirement acts, all are subject to the collateral-source rule.[27]

Examples of collateral sources that are inadmissible to reduce a defendant's

liability, in both our jurisprudence and that of other states, are legion. Benefits to a

come from the defendant or a person acting for him." *Restatement (Second) of Torts* § 920A, cmt. b.

[26] *See also*, Richard C. Maxwell, *The Collateral Source Rule in the American Law of Damages*, 46 Minn. L. Rev. 669, 672 (1962) ("Typically, the insurance cases make no distinction in relation to the type of insurance involved nor do they usually rest upon a stated conclusion that double recovery is avoided because the insurer is subrogated to the rights of the insured.").

[27] *Restatement (Second) of Torts* § 920A, cmt. c (footnotes added).

plaintiff protected by the collateral source rule come from sources as diverse as life

insurance,[28] health insurance,[29] accident insurance,[30] workers' compensation,[31] sick pay,[32]

---

[28] *Brabham v. Baltimore & O.R. Co.*, 220 F. 35, 37-38 (4th Cir. 1914) ("When an action is brought against a wrongdoer, he is not entitled to have the damages consequent upon the commission of his wrongful act reduced by proving that the plaintiff has received compensation for the loss from a collateral source wholly independent of himself. . . . [T]he court below erred in permitting the defendant to prove that the mother of the decedent received the sum of $2,500 [life] insurance on account of the death of her son.").

[29] Syllabus Point 7, *Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584 (1981) ("The collateral source rule normally operates to preclude the offsetting of payments made by health and accident insurance companies or other collateral sources as against the damages claimed by the injured party.").

[30] *Id. See also*, Syllabus Point 4, *Johnson by Johnson v. General Motors Corp.*, 190 W.Va. 236, 438 S.E.2d 28 (1993) ("The collateral source rule operates to preclude the offsetting of uninsured or underinsured benefits since the benefits are the result of a contractual arrangement which is independent of the tortfeasor[.]").

[31] Syllabus Point 3, *Mercer v. Ott*, 78 W.Va. 629, 89 S.E. 952 (1916) ("Where a workman is killed by an accident arising in the course of and resulting from his employment, and a tort-feasor other than his employer is responsible therefor, the right to compensation from the workmen's compensation fund by a dependent of the deceased is not lost by a recovery of damages against the tort-feasor, by the personal representative of the deceased."); Syllabus Point 6, *Merrill v. Marietta Torpedo Co.*, 79 W.Va. 669, 92 S.E. 112 (1917) ("An employé who receives compensation for an injury from the workmen's compensation fund is not thereby estopped to sue a third person, not his employer, whose negligence caused his injury."); Syllabus Point 3, *Jones v. Appalachian Elec. Power Co.*, 145 W.Va. 478, 115 S.E.2d 129 (1960) ("The amount of compensation received for injury or death from the Workmen's Compensation Fund is not a proper subject for a remittitur in an action by the injured person, or the administrator of his estate in case of death, against a third party responsible for his injury or death."); Syllabus Point 3, *Jones v. Laird Found., Inc.*, 156 W.Va. 479, 195 S.E.2d 821 (1973) ("Workmen's Compensation benefits for an original work related injury and for aggravation of an original injury, or for a care in selecting a physician and treatment administered for a work related injury, are within the 'Collateral Source Rule' in the same way as accident insurance, health insurance and life insurance, and, therefore, benefits from Workmen's Compensation cannot be applied to reduce damages in an

(continued . . .)

13

vacation pay,[33] gratuitous nursing care by a relative,[34] charity,[35] remarriage,[36] disability insurance,[37] veteran's and military hospitals,[38] tax savings,[39] private or government

---

action against a successive tort-feasor such as a physician or hospital for injury caused by negligent or unskillful treatment of a compensable injury.").

[32] Syllabus Point 4, *Ellard v. Harvey*, 159 W.Va. 871, 231 S.E.2d 339 (1976) ("One claiming damages for loss of wages is not barred from recovering on the claim merely because he was paid in accordance with a sick leave policy or similar plan while away from work."); Syllabus Point 3, *King v. Bittinger*, 160 W.Va. 129, 231 S.E.2d 239 (1976) (same).

[33] *Ellard v. Harvey*, 159 W.Va. at 879, 231 S.E.2d at 344 ("[A]n injured party may recover damages for lost leave, whether accumulated sick time or vacation time, for which he is paid by the employer[.]").

[34] Syllabus Point 5, *Kretzer v. Moses Pontiac Sales, Inc.*, 157 W.Va. 600, 201 S.E.2d 275 (1973) (plaintiff's unmarried daughter, who had always lived with the plaintiff, quit her job after the accident in order to care for her injured mother; "An injured person is entitled to recover damages for reasonable and necessary nursing services rendered to him, whether such services are rendered gratuitously or paid for by another.").

[35] *See*, *e.g.*, *Big Bird Tree Servs. v. Gallegos*, 365 S.W.3d 173 (Tex. App. 2012) (although indigent plaintiff qualified for healthcare charity program and received medical services free of charge, reasonable medical expense was "incurred" and could be recovered from defendant under collateral source rule).

[36] Syllabus Point 6, *Dimmey v. Wheeling & E.G. Railroad Co.*, 27 W.Va. 32 (1885) ("Where the husband as administrator of his deceased wife brought an action to recover damages of a street railroad company for causing her death, and he was on trial examined as a witness on his own behalf, it was improper on cross examination to ask him: 'Are you not engaged to be married again.'"); Syllabus Point 4, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981) ("Evidence of the remarriage of a surviving spouse, or the possibility of such remarriage, ordinarily is not admissible to mitigate damages in a wrongful death action."); Syllabus Point 9, *Keesee v. General Refuse Service, Inc.*, 216 W.Va. 199, 604 S.E.2d 449 (2004) (same). *But see* William C. Harvin, *The Collateral Source Rule – Abandonment or Modification*, 10 Judges J. 28, 29 (April 1971) (advocating allowing evidence of remarriage because "the jury in appraising the loss does not know that there is a new spouse whose earnings will supplant those which

(continued . . .)

14

pension programs such as Social Security,[40] or other government programs like Medicare[41] and Medicaid.[42] The cases from this jurisdiction and others are clear: "Only

have been lost. A jury should not be misled into believing that the 'light of her life' has gone out and will remain forever extinguished, when in fact she has already struck another match.").

[37] *Hrnjak v. Graymar, Inc.*, 4 Cal.3d at 733, 484 P.2d at 604-05 (evidence a plaintiff "demonstrated the prudence to purchase disability insurance coverage" inadmissible to show plaintiff is a malingerer).

[38] *Sainsbury v. Pennsylvania Greyhound Lines*, 183 F.2d 548, 550 (4th Cir. 1950) (plaintiff received free care at the Marine and Naval Hospital; "It is generally well settled that the fact that the plaintiff may receive compensation from a collateral source (or free medical care) is no defense to an action for damages against the person causing the injury."); *Plank v. Summers*, 203 Md. 552, 562, 102 A.2d 262, 267 (1954) (the value of medical and hospital services furnished gratuitously by a naval hospital to plaintiffs as members of the United States Navy were proper items for the jury's consideration in determining the amount of damages to be paid by defendants); *Hudson v. Lazarus*, 217 F.2d 344, 347 (D.C. Cir. 1954) ("We see no reason to distinguish services rendered by a naval hospital to the veteran Hudson from services rendered by a naval hospital to a man still in the Navy."); *Banks v. Crowner*, 694 P.2d 101, 105 (Wyo. 1985) ("hospital bills from the Veteran's Administration (V.A.) were properly submitted to the jury for consideration").

[39] *See* Michael I. Krauss & Robert A. Levy, *Calculating Tort Damages for Lost Future Earnings: The Puzzles of Tax, Inflation and Risk*, 31 Gonz. L. Rev. 325, 335 (1996) (stating that personal injury elements of tort awards are nontaxable).

[40] *Moyer v. Merrick*, 155 Colo. 73, 80, 392 P.2d 653, 657 (1964) ("courts have almost uniformly held that evidence of receipt by plaintiff of a public or private pension cannot be admitted into evidence. It is not in mitigation of damage so has no place in the trial of a case."); *Nigra v. Walsh*, 797 A.2d 353, 355 (Pa. Super. Ct. 2002) (trial court erred and violated collateral source rule in permitting defendant to present evidence plaintiff was receiving social security disability benefits). *See generally*, H.G. Hirschberg, *Collateral Source Rule: Receipt of Public or Private Pension as Affecting Recovery Against a Tortfeasor*, 75 A.L.R.2d 885 (1961).

[41] *Baptist Healthcare Sys., Inc. v. Miller*, 177 S.W.3d 676, 682-83 (Ky. 2005) ("It is improper to reduce a plaintiff's damages by payments for medical treatment

(continued . . .)

benefits received from the original tortfeasor, the tortfeasor's agent, or a joint tortfeasor reduce a tort defendant's liability."[43]

We turn now to the specific question at hand: does the collateral source rule protect the amounts discounted from the plaintiff's medical bill or written off by the medical provider? We hold that it does, because the amount of the medical expense that was discounted or written off can be considered both a benefit of the plaintiff's bargain

---

under a health insurance policy if the premiums were paid by the plaintiff or a third party other than the tortfeasor. . . . Medicare benefits are governed by the collateral source rule and are treated the same as other types of medical insurance."); *Brown v. Van Noy*, 879 S.W.2d 667, 676 (Mo.Ct.App. 1994) (plaintiff permitted to admit evidence of medical expense paid or "written off" as part of Medicare coverage because it "is not materially different than expenses paid by insurance or paid in part by insurance with part 'written off' pursuant to a contract or agreement between the medical provider and the insurance company"). *See also*, William C. Harvin, *The Collateral Source Rule – Abandonment or Modification*, 10 Judges J. 28 (April 1971) ("With the rise of the welfare state, the plaintiff has a veritable arsenal of governmentally supported programs to assure minimum standards of care and comfort – the Veterans Administration, Medicare, social security, state unemployment and disability plans, and various other statutory benefits. Virtually all of these payments and services are inadmissible for mitigation purposes.").

[42] *Loncar v. Gray*, 28 P.3d 928, 933 (Alaska 2001) ("The collateral source rule 'exclud[es] evidence of other compensation on the theory that such evidence would affect the jury's judgment unfavorably to the plaintiff on the issues of liability and damages.' Under this rule, the superior court appropriately excluded Medicaid evidence at the beginning of the trial."); *Wills v. Foster*, 229 Ill.2d 393, 418-19, 892 N.E.2d 1018, 1033 (2008) (Where plaintiff was a recipient of Medicaid and Medicare, "the fact that the collateral source was the government instead of a private insurance company is a distinction without a difference. All plaintiffs are entitled to seek to recover the full reasonable value of their medical expenses."); *Bynum v. Magno*, 106 Haw. 81, 89, 101 P.3d 1149, 1157 (2004) ("Inasmuch as Medicare/Medicaid are social legislation programs, we conclude that the collateral source rule applies to prevent the reduction of a plaintiff's award of damages to the discounted amount paid by Medicare/Medicaid.").

[43] Krauss & Kidd, 48 U. Louisville L. Rev. at 11.

with his health insurance carrier, and a gratuitous benefit arising from the plaintiff's bargain with the medical provider. "A creditor's forgiveness of debt — that is what a write-down in the present context amounts to — is often considered equivalent to payment in other contexts, e.g., income tax, credit bids at foreclosure, etc. In other words, a creditor's partial forgiveness of a tort victim's medical bills via a write-down is properly considered a third-party 'payment,' evidence of which is barred by the collateral source rule."[44] It has been said,

> The general rule is that a plaintiff who has been injured by the tortious conduct of the defendant is entitled to recover the reasonable value of medical and nursing services reasonably required by the injury. This is a recovery for their value and not the expenditures actually made or obligations incurred.[45]

A majority of jurisdictions that have considered this question hold that a plaintiff can present to the jury the amount that a health care provider initially billed for the services necessarily rendered, and not merely amounts that were later paid.[46] The

---

[44] *McConnell v. Wal-Mart Stores, Inc.*, ___ F.Supp.2d ___, ___, 2014 WL 464799 *4 (D. Nev. Feb. 5, 2014).

[45] *Bynum v. Magno*, 106 Haw. at 90, 101 P.3d at 1158.

[46] *See Swanson v. Brewster*, 784 N.W.2d 264, 277 (Minn. 2010); *Aumand v. Dartmouth Hitchcock Medical Center*, 611 F.Supp.2d 78, 91-92 (D.N.H. 2009); *White v. Jubitz Corp.*, 347 Or. 212, 219 P.3d 566, 583 (2009); *Tucker v. Volunteers of America Co. Branch*, 211 P.3d 708, 712-13 (Colo.App. 2008); *Wills v. Foster*, 229 Ill.2d 393, 415-418, 892 N.E.2d 1018, 1032-33 (2008); *Papke v. Harbert*, 738 N.W.2d 510, 535-36 (S.D. 2007); *Leitinger v. DBart, Inc.*, 302 Wis.2d 110, 136, 736 N.W.2d 1, 14 (2007); *Pipkins v. TA Operating Corp.*, 466 F.Supp.2d 1255, 1261–62 (D.N.M. 2006); *Arthur v. Catour*, 216 Ill.2d 72, 83, 833 N.E.2d 847, 854 (2005); *Lopez v. Safeway Stores, Inc.*, 212 Ariz. 198, 129 P.3d 487, 496 (Ariz.Ct.App. 2006); *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d 676, 683–84 (Ky. 2005); *Mitchell v. Haldar*, 883 A.2d 32, 40 (Del. 2005);

(continued . . .)

17

tortfeasor cannot offer evidence that part of the bill was discounted or written off.

Further, the plaintiff is not limited to recovering only expenditures made or obligations actually incurred. The plaintiff may recover the full amount of his or her reasonable and necessary medical expenses, even if those expenses were later discounted and a portion written off by the health care provider. Regardless of how, or even whether, the plaintiff's obligation to the medical provider was later discharged, the plaintiff became liable for the bills when the services were received; the plaintiff is therefore entitled to recover the value of the services. "The damage is sustained when the plaintiff incurs the liability, and the method by which that liability is later discharged has no effect on the measure of damages."[47]

The defendant argues that the collateral source rule operates solely to protect "payments." He argues that a discount, reduction or write-off of a bill by a creditor is not a payment, and is therefore not encompassed by the collateral source rule. We reject this tenuous distinction, because the law is clear that the collateral source rule

---

*Bynum v. Magno*, 101 P.3d at 1157; *Covington v. George*, 359 S.C. at 103-05, 597 S.E.2d at 144-45; *Calva-Cerqueira v. United States*, 281 F.Supp.2d 279, 295-96 (D.D.C. 2003); *Brandon HMA, Inc. v. Bradshaw*, 809 So. 2d 611, 618 (Miss. 2001) (and *Wal-Mart Stores, Inc. v. Frierson*, 818 So.2d 1135, 1140 (Miss. 2002)); *Koffman v. Leichtfuss*, 246 Wis.2d 31, 48-49, 630 N.W.2d 201, 210 (2001); *Olariu v. Marrero*, 248 Ga.App. 824, 825, 549 S.E.2d 121, 123 (2001); *Acuar v. Letourneau*, 260 Va. 180, 192, 531 S.E.2d 316, 322 (Va. 2000); *Montgomery Ward & Co., Inc. v. Anderson*, 334 Ark. 561, 567-68, 976 S.W.2d 382, 385 (1998); *Texarkana Memorial Hosp., Inc. v. Murdock*, 903 S.W.2d 868, 874 (Tex.App. 1995), *rev'd on other grounds* 946 S.W.2d 836 (Tex.1997); *Brown v. Van Noy*, 879 S.W.2d 667, 676 (Mo.Ct.App. 1994).

[47] Lewis R. Mills, *Note: The Collateral Source Doctrine in Missouri*, 1953 Wash.U.L.Q. 453, 461 (1953).

18

applies to *any* benefit received by a plaintiff from *any* source in line with the plaintiff's interests.

The public policies behind the collateral source rule are wide ranging. For one, "it is better for injured plaintiffs to receive the benefit of collateral sources in addition to actual damages than for defendants to be able to limit their liability for damages merely by the fortuitous presence of these sources."[48] The Supreme Court of Virginia has said:

> The collateral source rule is designed to strike a balance between two competing principles of tort law: (1) a plaintiff is entitled to compensation sufficient to make him whole, but no more; and (2) a defendant is liable for all damages that proximately result from his wrong. A plaintiff who receives a double recovery for a single tort enjoys a windfall; a defendant who escapes, in whole or in part, liability for his wrong enjoys a windfall. *Because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer.*[49]

The collateral source rule is a central part of the tort system's goal of "requiring tortfeasors to make right their wrongful acts."[50] The primary unifying principle of tort law is one of corrective justice, that is, the law establishes a legal duty for a tortfeasor to repair any damage or losses carelessly inflicted upon a victim. As the drafters of the *Restatement (Second) of Torts* recognized, "it is the tortfeasor's

---

[48] *Ilosky v. Michelin Tire Corp.*, 172 W.Va. at 446, 307 S.E.2d at 615.

[49] *Schickling v. Aspinall*, 235 Va. 472, 474-75, 369 S.E.2d 172, 174 (1988) (emphasis added).

[50] Krauss & Kidd, 48 U. Louisville L. Rev. at 52 (2009).

responsibility to compensate for *all* harm that he causes,"[51] not merely the net loss to the injured party.

We are persuaded that a defendant owes to an injured plaintiff a duty to make right for his or her wrongful acts, and so must pay the plaintiff compensation for all losses proximately caused by any negligence or wrongdoing. It is the defendant's responsibility to repair the damage he or she has done to the plaintiff, and the plaintiff's receipt of benefits from collateral sources, whether from affection, philanthropy, contract, social services, or others cannot relieve the defendant of this obligation. "The collateral source rule requires the injured party to be made whole exclusively by the tortfeasor and not by a combination of compensation from the tortfeasor and collateral sources."[52]

In light of the above, we hold that the rule that collateral source benefits are not subtracted from a plaintiff's recovery applies to proceeds or benefits from sources such as insurance policies, whether maintained by the plaintiff or a third party; employment benefits; services or benefits rendered gratuitously (whether free, discounted, or later written off); and social legislation benefits. The law does not differentiate between the nature of these collateral source benefits, so long as they did not come from the defendant or a person acting for the defendant.

In summary, we stand by the principle that an "injured person is entitled to recover damages for reasonable and necessary nursing services rendered to him, whether

---

[51] *Restatement (Second) of Torts* §920A, cmt. b (emphasis added).

[52] *Mitchell v. Haldar*, 883 A.2d at 38.

20

such services are rendered gratuitously or paid for by another."[53] A person who has been injured by the tortious conduct of a culpable tortfeasor is entitled to recover from the tortfeasor the reasonable value of medical and nursing services necessarily required by the injury. This recovery is for the reasonable value of the services and not for the expenditures actually made or obligations incurred.

Stated another way, the collateral source rule permits an injured person to recover *all* of his or her reasonable medical costs that were necessarily required by the injury. Where a person's health care provider agrees to reduce, discount or write off a portion of the person's medical bill, the collateral source rule permits the person to recover the entire reasonable value of the medical services necessarily required by the injury. The tortfeasor is not entitled to receive the benefit of the reduced, discounted or written-off amount.

In this case, the defendant does not deny that the plaintiff would have been liable for the total amount billed by his medical providers absent his health insurance coverage. Whether the plaintiff took benefits from his health insurer in the form of medical expense payments or in the form of discounts and write-offs because of agreements between his health insurer and his health care providers is irrelevant. Those amounts written off are as much of a benefit for which the plaintiff paid consideration as are the actual cash payments made by his health insurer to the health care providers. This

---

[53] Syllabus Point 5, *Kretzer v. Moses Pontiac Sales, Inc.*, 157 W.Va. 600, 201 S.E.2d 275 (1973).

21

is the very purpose of the collateral source rule: to prevent a defendant from reaping the benefits of a plaintiff's preparation and protection.[54]

Accordingly, we find no error in the circuit court's decision to apply the collateral source rule and prohibit the defendant from introducing evidence of the plaintiff's discounted medical bills.

## B. Punitive Damage Verdict

The defendant's second argument concerns the punitive damage verdict. Specifically, the defendant asserts that the circuit court erred in allowing one question to be asked about the availability of liability insurance in excess of policy limits, and erred in instructing the jury that insurance coverage for an excess verdict "may or may not" be available.

The lawyers for both parties were permitted to give opening statements in the punitive damages phase of the trial. The lawyer for the defendant informed the jury that the defendant would testify that he did not have the resources to pay punitive damages, stating:

---

[54] We note that, in the limited context of medical negligence actions, the Legislature has chosen to alter this balance and to permit a careless defendant to benefit from "evidence of payments the plaintiff has received for the same injury from collateral sources." *W.Va. Code* § 55-7B-9a [2003]. *But see State ex rel. Ohio Acad. of Trial Lawyers v. Sheward*, 86 Ohio St. 3d 451, 715 N.E.2d 1062 (1999); *O'Bryan v. Hedgespeth*, 892 S.W.2d 571 (Ky. 1995); *Wentling v. Med. Anesthesia Servs., P.A.*, 237 Kan. 503, 701 P.2d 939 (1985); *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825 (N.H. 1980).

He will also tell you that he has no financial means at this point to pay a punitive damage verdict. He was working at the time of this accident, but he'll tell you [he] since has been laid off. He was working for a company that sold equipment to mines and has been laid off since May and is currently receiving unemployment benefits in the amount of 800-and-some dollars a week. At the time that he was working, he made 30-some thousand dollars [a] year. He has – as a part of his unemployment, has an obligation to apply for jobs. He has no job prospects at this point.

He's 35 years old. Living with his parents. Doesn't own any property. He owns a car, which I believe is a 2002 car that is paid off. He has nothing else of financial value to pay [a punitive damage verdict].

This Court has said that if a defendant "offers evidence of his financial status to influence the jury on punitive damages, then the plaintiff may rebut such evidence by introducing proof of the defendant's liability insurance."[55] Following the opening statements about the defendant's financial inability to pay punitive damages, the lawyer for the plaintiff called the defendant as an adverse witness and asked the following two questions about the existence of liability insurance:

Plaintiff's Counsel: You also, in fact, have insurance, don't you?

Defendant: I do.

Plaintiff's Counsel: So you are not a man without assets; isn't that correct?

Defendant: I – I would not say that that would – I mean, I don't have a lot of assets. . .

---

[55] Syllabus Point 4, in part, *Wheeler v. Murphy*, 192 W.Va. 325, 452 S.E.2d 416 (1994).

Defense counsel responded by asking the defendant on cross-examination about the amount of liability insurance he had:

> Defense Counsel:  [Plaintiff's counsel] also asked you about insurance.  And you did have insurance at the time of the accident, correct?
>
> Defendant:  I did.
>
> Defense Counsel: What – do you know what your policy limits are?
>
> Defendant: I believe they were $100,000 at the time, yes.

On appeal, counsel for the defendant challenges one question that was asked on re-direct examination of the defendant.  Because counsel for the defendant left the jury with the impression that there was only $100,000.00 in coverage available to the defendant, counsel for the plaintiff asked:

> Plaintiff's Counsel:  With regards to your insurance coverage, there was, in fact, a question about actually how much coverage you have; isn't there?

This question pertains to the amount of insurance coverage actually available to the defendant in excess of policy limits under *Shamblin v. Nationwide Mutual Insurance Company.*[56]  In *Shamblin*, this Court ruled that if an insurance company fails to settle a liability action within policy limits where there was an opportunity to settle, and thereby fails to protect a defendant from personal liability, then the insurance company has *prima facie* acted in bad faith and may be required to pay any

---

[56] 183 W.Va. 585, 396 S.E.2d 766 (1990).

judgment against the defendant in excess of the policy limits.[57]  The plaintiff contends that he offered to settle his claims against the defendant within policy limits.  Because the defendant's liability insurer declined to settle, and because the jury returned a compensatory damage verdict in excess of the policy limits, the plaintiff asserts that the defendant's insurer should be required to pay the entire verdict without regard to policy limits.

Defense counsel objected to plaintiff's counsel's question, and the trial court had an extensive discussion with the lawyers (outside of the jury's presence) to discuss whether the defendant's insurer had been "*Shamblin*-ized."  Defense counsel conceded that the defendant hired an independent lawyer (not paid by the insurance carrier) to protect him from any *Shamblin*-type excess verdict.  Further, it was the defendant's personal position that the liability insurer "is going to be responsible for the entire verdict, regardless of what it is."  The trial court determined that defense counsel had opened the door to the amount of available insurance coverage, and said "it is simply not fair to let the jury believe that those are the only assets available."  Accordingly, the

---

[57] Syllabus Point 2 of *Shamblin v. Nationwide Mut. Ins. Co*., 183 W.Va. 585, 396 S.E.2d 766 (1990), states:

> Wherever there is a failure on the part of an insurer to settle within policy limits where there exists the opportunity to settle and where such settlement within policy limits would release the insured from any and all personal liability, the insurer has prima facie failed to act in its insured's best interest and such failure to so settle prima facie constitutes bad faith toward its insured.

trial court ruled it was proper to ask the defendant about the possibility of additional coverage for an excess verdict, but limited plaintiff's counsel to one question and ordered counsel not to "belabor it."

When the jury returned, plaintiff's counsel asked the defendant the following:

> Plaintiff's Counsel: Mr. Kenney, before we broke we were discussing the issue regarding your amount of insurance coverage. You understand that; is that correct?
>
> Defendant: I do.
>
> Plaintiff's Counsel: Okay. You understand that because of some actions that have been taken in . . . the course of this case, that you may have additional coverage to cover whatever the verdict may be; isn't that correct?
>
> Defendant: That is correct.

At the conclusion of evidence in the punitive damage phase of the trial, the trial court proposed giving the following limiting instruction to the jury:

> The Court instructs you that because of certain legal actions that have been taken in this case that there may or may not be additional coverage to pay whatever your verdict may be.

Defense counsel objected to this instruction that there "may or may not be additional coverage" under *Shamblin* on the ground that "under Rule 51 [of the *Rules of Civil Procedure*] that that's commenting upon the evidence." The trial court rejected this objection and read the instruction to the jury.

After deliberations, the jury returned a verdict finding that the defendant "engaged in grossly negligent or reckless conduct which caused the motor vehicle

26

accident" with the plaintiff. The jury returned a $300,000.00 punitive damage award against the defendant.

The defendant argues that the questions and instructions allowed by the circuit court crossed the line from the existence and policy limits of defendant's liability insurance, and allowed the jury to wander in areas of pure speculation about whether there "may be" unlimited insurance coverage available to the defendant. The defendant argues that the circuit court permitted the jury to speculate about the potential post-judgment effect of their punitive damage award.[58] This is because at the time of trial (and, in fact, up to the time of oral argument before this Court) there had been no determination by the circuit court that the defendant's insurance carrier would be obligated under *Shamblin* to indemnify the defendant for any liability in excess of policy limits.

The defendant also argues that the circuit court's instruction to the jury was in error, because it was an improper comment upon the evidence. Rule 51 of the *Rules of Civil Procedure* [1998] says that, "the instructions given by the court . . . shall not

---

[58] The defendant's argument is patterned after *Lacy v. CSX Transp. Inc.*, 205 W. Va. 630, 520 S.E.2d 418 (1999), where we disapproved a circuit court's actions allowing a jury to speculate on the effects of joint and several liability. We said, in Syllabus Point 4 of *Lacy*, that:

> In a civil trial it is generally an abuse of discretion for the trial court to instruct the jury or permit argument by counsel regarding the operation of the doctrine of joint and several liability, where the purpose thereof is to communicate to the jury the potential post-judgment effect of their assignment of fault.

comment upon the evidence[.]"  The defendant contends that by instructing the jury that "there may or may not be additional coverage to pay whatever your verdict may be," the circuit court had given undue influence to one piece of the defendant's financial condition.

After carefully reviewing the appendix record, we find that the circuit court did not err.  Counsel for the defendant "opened-the-door" to the issue of liability coverage when she asserted in opening argument that the defendant was financially unable to pay any punitive damage verdict when, in fact, he had liability insurance. Further, when counsel for the defendant asked questions leaving the jury with the impression that only $100,000.00 in coverage was available, she "opened-the-door" to the availability of coverage for an excess verdict.  At the time of the punitive phase of the trial, both the plaintiff and defendant were aware that the liability insurer could be faced with paying an excess verdict pursuant to *Shamblin*.  The plaintiff had sought to settle the case within the $100,000.00 policy limits.  Taken together, even without a judicial ruling, these facts established that the liability insurer had "prima facie failed to act in its insured's best interest" and could be liable for an excess verdict.  The circuit court correctly discerned that it would have been misleading to leave the jury thinking that only $100,000.00 in coverage was available.

Furthermore, the formulation of jury instructions is a matter within the discretion of the trial court:

> The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard.

28

A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.[59]

The appendix record establishes that the circuit court's instruction was accurate and based directly on the testimony of the defendant. Further, the instruction was fair to both parties.

We therefore find no error underlying the jury's punitive damage verdict.

## IV.
## CONCLUSION

We find no error in the circuit court's judgment order dated October 9, 2012, or in the circuit court's decision denying the defendant a new trial dated February 26, 2013.[60]

Affirmed.

---

[59] Syllabus Point 6, *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995).

[60] The defendant makes two additional arguments that the circuit court erred by including lines for certain damages on the jury's verdict form. However, the defendant never raised any objection about these damages on the verdict form to the circuit court. "Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal." Syllabus Point 1, *State Road Comm'n v. Ferguson*, 148 W.Va. 742, 137 S.E.2d 206 (1964). Accordingly, we decline to consider these two assertions by the defendant.