# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 14, 2015 Session

## KINGSTON NEALE B/N/F DION RUSSELL v. UNITED WAY OF GREATER KINGSPORT ET AL.

**Appeal from the Law Court for Sullivan County (Kingsport)**
**No. C40238     John S. McLellan, III, Judge**

---

### No. E2014-01334-COA-R3-CV-FILED-JULY 28, 2015

---

This negligence action arose when a minor child injured his finger while participating in a woodworking shop activity at a facility operated by the Boys and Girls Club of Greater Kingsport. The child's father and mother originally filed a joint action as next friends of the child, naming as defendants the Boys and Girls Club of Greater Kingsport and the United Way of Greater Kingsport (collectively, "Defendants"). The parents eventually nonsuited the original action. The child's father subsequently filed this action as next friend of the child, seeking damages for permanent impairment, pain and suffering, medical expenses, and loss of earning capacity. Defendants filed concomitant motions for summary judgment, each asserting that the father lacked standing to bring this action pursuant to Tennessee Code Annotated § 20-1-105(b). Following a hearing, the trial court granted summary judgment in favor of Defendants. The father has appealed. Having determined that Tennessee Code Annotated § 20-1-105(b) (2009) operates only to bar an action brought by the father on his own behalf to recover medical expenses and loss of the child's service, we affirm the grant of summary judgment to Defendants only as to the father's claim for these damages. We reverse the grant of summary judgment as to the claims brought on behalf of the child and remand to the trial court for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and BRANDON O. GIBSON, JJ., joined.

Kyle D. Vaughan, Kingsport, Tennessee, for the appellant, Kingston Neale b/n/f Dion Russell.

S. Morris Hadden and Caroline Ross Williams, Kingsport, Tennessee, for the appellee, United Way of Greater Kingsport.

T. Kenan Smith, Knoxville, Tennessee, for the appellee, Boys and Girls Club of Greater Kingsport.

## OPINION

### I. Factual and Procedural Background

The plaintiff father, Dion Russell ("Father"), filed this action as next friend of the minor child, Kingston Neale ("the Child"), who was nine years old at the time of the accident at issue. On April 18, 2011, the Child injured a finger on his right hand as he participated in a program known as "Mr. Bob's Workshop" at the facility operated by the co-defendant, the Boys and Girls Club of Greater Kingsport ("Boys and Girls Club"). The workshop was supervised by Bob Schrader, a Boys and Girls Club staff member. At the time of the accident, the co-defendant, United Way of Greater Kingsport ("United Way"), contributed funding to programs managed by the Boys and Girls Club.

The facts regarding exactly how the Child injured his finger were under some dispute in the parties' pleadings. According to the complaint, Mr. Schrader directed the Child to unplug an electric saw "or other woodcutting machine with a blade or cutting edge that was turning," and the Child's finger was cut when he "placed his hand on the machine in order to keep his balance." During the Child's deposition testimony, however, he acknowledged that he unplugged the machine without being instructed to do so. He stated that his finger was injured when, seeing that the machine did not stop, he placed his finger on the rotating part of the machine to slow it down. The Boys and Girls Club averred in its answer to the complaint that the machine was an electric grinder and was in the process of rotating to a stop when the Child touched it. It is undisputed that the Child required medical treatment for the resultant injury. In the complaint, Father asserted that the Child suffered a severe laceration and permanent impairment to his finger, but Father presented no further detail regarding the nature of the impairment.

In March 2012, Father and the Child's mother, Jessica Neale ("Mother"), acting through their former counsel, jointly filed a complaint as next friends of the Child. A copy of this complaint does not appear in the record, but it is undisputed that the complaint also named the same defendants as those named in the current action. The original complaint was dismissed by voluntary nonsuit in July 2012.

On July 15, 2013, Father, acting without benefit of counsel, filed the instant complaint as next friend of the Child. Father alleged that Defendants had negligently

allowed an inherently dangerous activity to take place on their premises and had failed to exercise proper judgment in their supervision despite knowing that the activity created an unreasonable risk of harm. He further asserted that Defendants' alleged negligence was willful and wanton so as to constitute gross negligence. Father requested damages in an unspecified amount to compensate for permanent impairment, pain and suffering, medical expenses, loss of earning capacity, and costs of bringing the suit.

The Boys and Girls Club filed an answer on August 2, 2013, denying all allegations of negligence and asserting the affirmative defense of comparative fault. United Way subsequently filed a separate answer, also denying all allegations of negligence and likewise asserting the defense of comparative fault. In addition, United Way averred that Father lacked standing to bring this action because he lived apart from Mother, was not the primary residential parent, and had presented no allegation that he had paid the Child's medical expenses. *See* Tenn. Code Ann. § 20-1-105(b) (providing that when a minor child's parents are living apart and one parent "has exclusive legal custody," the custodial parent has "the sole right to maintain an action for the expenses and the actual loss of service resulting from an injury to the minor child," except that the noncustodial parent may bring such an action for expenses that he or she has paid). United Way concomitantly filed a motion to dismiss the complaint on August 16, 2013.

On August 22, 2013, Father filed a response to the motion to dismiss, in which he requested that the trial court join Mother as a co-plaintiff in the action. Father argued that in the alternative, the court should not interpret Tennessee Code Annotated § 20-1-105(b) as barring his complaint because as the alternate residential parent, he maintained parental rights to the Child.

In March 2014, Defendants filed separate motions for summary judgment, both averring that Mr. Russell lacked standing to file the lawsuit pursuant to Tennessee Code Annotated § 20-1-105(b). United Way also maintained that it should be granted summary judgment because, although it provided funding to the Boys and Girls Club, it did not supervise, monitor, or direct Mr. Bob's Workshop. United Way attached to its motion, *inter alia*, excerpts from testimony provided through deposition by the Child, Mother, and Father. The Boys and Girls Club attached to its motion, *inter alia*, a copy of the parents' permanent parenting plan order entered by the Sullivan County Juvenile Court on May 21, 2008. According to the parenting plan, the juvenile court had designated Mother as the primary residential parent and granted to Father 111 days of co-parenting time per year. Mother testified that she believed the "most traumatizing thing" for the Child was "to keep living it [the accident] every day, every other day, every week." It is undisputed that Mother chose not to participate as a plaintiff or next friend of the Child in the instant action.

Father, by this time represented by his current counsel, filed a response to the Defendants' motions on May 1, 2014, requesting that the motions be held in abeyance pending further opportunity for discovery. He subsequently filed a motion to join Mother as an involuntary plaintiff pursuant to Tennessee Rule of Civil Procedure 19.01. Father also asserted in his response that as Tennessee Code Annotated § 20-1-105(b) is written, it violates the Equal Protection Clauses of the United States Constitution and Tennessee Constitution.[1]

Following a hearing, the trial court granted summary judgment in favor of the Defendants and dismissed the complaint with prejudice in an order entered June 13, 2014. The court found that Father lacked standing to bring the action pursuant to Tennessee Code Annotated § 20-1-105(b). The court made no explicit finding regarding Father's motion to join Ms. Neale as an involuntary plaintiff. Father timely appealed.

## II. Issues Presented

Father presents two issues for our review, which we restate as follows:

1.      Whether the trial court erred by determining that Father lacked standing to file this action pursuant to Tennessee Code Annotated § 20-1-105(b).

2.      Whether the trial court erred by declining to address Father's motion to join Mother as an involuntary plaintiff pursuant to Tennessee Rule of Civil Procedure 19.01.

## III. Standard of Review

For actions initiated on or after July 1, 2011, such as the one at bar, the standard of review for summary judgment delineated in Tennessee Code Annotated § 20-16-101 (Supp. 2014) applies. *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011). The statute provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> > (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

---

[1]Father has not raised this constitutional argument on appeal.

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.[2] The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). "A summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Dick Broad. Co.*, 395 S.W.3d at 671 (citing Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has recently instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

Insofar as our analysis requires statutory interpretation, our Supreme Court has summarized the principles involved as follows:

> When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re*

---

[2]As this Court has explained:

> Section 20-16-101 was enacted to abrogate the summary-judgment standard set forth in *Hannan* [*v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)], which permitted a trial court to grant summary judgment only if the moving party could either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. The statute is intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at *5 n.3 (Tenn. Ct. App. July 5, 2012).

*Walker v. Bradley County Gov't*, No. E2013-01053-COA-R3-CV, 2014 WL 1493193 at *3 n.3 (Tenn. Ct. App. Apr. 15, 2014). *See also Sykes*, 343 S.W.3d at 25 n.2.

*C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).

IV. Father's Standing to Maintain the Action

Father contends that the trial court erred by applying Tennessee Code Annotated § 20-1-105(b) to find that he did not have standing to maintain the instant action. The trial court through its comments made at the close of trial indicated that it was granting summary judgment in favor of Defendants because "when one of the biological [or adoptive] parents is . . . designated as a primary residential parent pursuant to the statute that – that mother in this case would have the sole right to maintain the action . . . ." Upon our thorough review of the record and applicable authorities, we conclude that the trial court properly interpreted this statute to bar any claim brought by Father to recover medical expenses or loss of the Child's service resulting from the injury. However, we further conclude that Father is not barred from bringing an action as next friend of the Child for damages that would be recoverable on the Child's behalf if he prevailed.

Father filed the instant action as the Child's next friend and has maintained in his response to the motions for summary judgment and on appeal that he is seeking relief on behalf of the Child. Neither Father nor Defendants have directly addressed the distinction between a cause of action available to a child against whom a tort allegedly has been committed and a cause of action available to the child's parent. As our Supreme Court has explained:

6

When a tort is committed against a child there [arise] two separate and distinct causes of action. The general rule is well stated by the Annotation in 42 A.L.R. 722, 724 as follows:

> The almost universally accepted theory is that, upon injury to a child, there immediately arises in favor of the parent a cause of action for loss of services, medical expenses to which he will be put, etc. and that another and distinct cause of action arises in favor of the child for the elements of damage to him, such as pain and suffering, disfigurement, etc.

*Dudley v. Phillips*, 405 S.W.2d 468, 469 (Tenn. 1966); *see also Luther, Anderson, Cleary & Ruth, P.C. v. State Farm Mut. Auto. Ins. Co.*, No. 03A01-9601-CV-00015, 1996 WL 198233 at *3 (Tenn. Ct. App. Apr. 25, 1996) (quoting with approval the above general rule as stated in *Dudley*). We will address in turn Father's standing to bring a cause of action on his own behalf and Father's standing to bring a cause of action as next friend of the Child.

## A. Father's Standing to Maintain a Cause of Action on His Own Behalf

To the extent that Father may have filed this action in an attempt to recover on his own behalf for the Child's medical expenses and loss of service to Father as a result of the injury, we agree with the trial court's determination that Father does not have standing to bring such an action. Tennessee Code Annotated § 20-1-105 (2009) is contained within the code chapter entitled "Parties to Actions" and addresses a parent's right to bring an action for expenses and loss of the child's service suffered by the parent as a result of the child's injury. *See Palanki ex rel. Palanki v. Vanderbilt Univ.*, 215 S.W.3d 380, 394 (Tenn. Ct. App. 2006) ("Tennessee Code Annotated section 20-1-105 provides that a claim for medical expenses incurred by a minor during his or her minority does not belong to the minor, but rather to the minor's parents."). Section 20-1-105, entitled, "Expenses and loss of service incident to injury to a child," provides in full:

(a) The father and mother of a minor child have equal rights to maintain an action for the expenses and the actual loss of service resulting from an injury to a minor child in the parents' service or living in the family except that where one (1) parent is dead or has deserted the family, the other parent shall have the sole right to maintain the action.

(b) In case the father and mother of the minor child are living apart and one (1) parent has exclusive legal custody of the child, the parent

with legal custody has the sole right to maintain an action for the expenses and the actual loss of service resulting from an injury to the minor child, except that the noncustodial parent in such case shall have a right to maintain or join an action brought under this section, for the expenses resulting from an injury to the minor child to the extent the noncustodial parent has paid those expenses.

It is undisputed that Father is designated in the parties' permanent parenting plan as the alternate residential parent and that he enjoys 111 days annually of residential co-parenting time with the Child. Mother testified through deposition that Father regularly exercised the co-parenting time granted by the juvenile court in the parenting plan. The parents enjoy joint decision-making in regard to educational decisions, non-emergency health care, religious upbringing, and extracurricular activities concerning the Child. Mother is, however, designated as the Child's primary residential parent, and the Child resides with her the greater percentage of time. The parties' permanent parenting plan also includes a section indicating that "for purposes of any other applicable state and federal laws," Mother is the Child's custodian. *See* Tenn. Code Ann. § 36-6-410 (2014) (requiring such a designation in permanent parenting plans). This section of the parties' parenting plan states as follows:

## IV. PRIMARY RESIDENTIAL PARENT (CUSTODIAN) FOR OTHER LEGAL PURPOSES

The child or children are scheduled to reside the majority of the time with the X mother __ father. This parent is designated as the primary residential parent also known as the custodian, **SOLELY** for purposes of any other applicable state and federal laws. If the parents are listed in Section II as joint decision-makers, then, for purposes of obtaining health or other insurance, they shall be considered to be joint custodians. THIS DESIGNATION DOES NOT AFFECT EITHER PARENT'S RIGHTS OR RESPONSIBILITIES UNDER THIS PARENTING PLAN.

(Emphasis in original; box checked in original to indicate designation of Mother.)

Father argues that the trial court erred by interpreting the "exclusive legal custody" element of Tennessee Code Annotated § 20-1-105(b) to mean that he did not have standing to bring this action because he is not the Child's primary residential parent. Father asserts that the language regarding custody in section 20-1-105(b) is "archaic and obsolete" and is inconsistent with language adopted by the General Assembly in the parenting plan statutory scheme. *See* Tenn. Code Ann. §§ 36-6-401 (2014), *et seq.* Father urges this Court to interpret Tennessee Code Annotated § 20-1-105(b) as

8

providing either or both parents living apart with standing to maintain an action provided that both exercise co-parenting time with the Child. Defendants argue that Tennessee Code Annotated § 36-6-410 resolves this issue by providing that for the purpose of all other state and federal statutes, a parent designated as the primary residential parent in a permanent parenting plan is deemed to be the child's custodian. We agree with Defendants regarding this interpretation.

The General Assembly enacted the parenting plan statutory scheme, Tennessee Code Annotated §§ 36-6-401, *et seq.*, in 1997. *See* 1997 Tenn. Laws Pub. Ch. 557 (H.B. 1140). Father relies in part on this Court's comments in *Hyde v. Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905 (Tenn. Ct. App. Oct. 12, 2010), regarding the change in language in child custody decisions initiated by this enactment. In *Hyde*, a case involving a father's petition to modify a parenting plan, this Court stated in pertinent part:

We note that Father submitted his brief and appeal using the terms of "custody" and "visitation." As recently explained by this Court:

These terms, while not entirely obsolete, are outmoded when considering a determination of parental responsibility under the parenting plan statute, Tennessee Code Annotated section 36-6-401 et seq., which was adopted in part to change the language of child custody decisions. *See* Janet Leach Richards, Richards on Tennessee Family Law § 8-2(e) (3d ed. 2008) (footnotes omitted). Judge Don R. Ash, one of the leading proponents of reform, explained the need to recast the terminology of these decisions: "The archaic terms 'custody' and 'visitation' convey ownership over the child and imply that one party is merely a visitor in the home. These terms should be replaced with more user-friendly words." Judge Don R. Ash, Bridge Over Trouble[d] Water: Changing the Custody Law in Tennessee, 27 U Mem. L. Rev. 769, 801 (2007) (footnote omitted). The parenting plan statute did just that, replacing the traditional concepts of joint legal and physical custody with a new concept: the residential parenting schedule. 19A W. Walton Garrett, Tennessee Practice Series: Tennessee Divorce, Alimony and Child Custody § 26:3, at 78 (2d rev. ed. 2007). As a result, traditional terms such as custody, visitation, custodial parent, and noncustodial parent have given way to new terms, e.g., "residential schedule, temporary and permanent parenting

9

> plans, primary residential parent, alternate residential parent,
> and parenting responsibilities." Richards, supra, at § 8-2(e)
> (footnotes omitted).

*Hyde*, 2010 WL 4024905 at *1 n.2 (quoting *In re Emma E.*, No. M2008-02212-COA-R3-JV, 2010 WL 565630 at n.2 (Tenn. Ct. App. Feb. 17, 2010)). As this Court further noted in *Hyde*, remnants of the "old" terminology remain in the Code. *See id.* at *1 n.2. Such "remnants" include the use of "Child Custody and Visitation" as the overall heading of Chapter 6 in Title 36.

Although we recognize Father's concern regarding the use of "old" terminology in Tennessee Code Annotated § 20-1-105(b) to differentiate between parenting responsibilities, we are not persuaded that such language renders the subsection ambiguous as to when a parent may maintain a tort action for expenses and loss of a child's service due to an injury. Since its enactment, the parenting plan statutory scheme has included a version of what is now codified as § 36-6-410, formerly § 36-6-413, which provides:

> Solely for the purpose of all other state and federal statutes and any applicable policies of insurance that require a designation or determination of custody, a parenting plan shall designate the parent with whom the child is scheduled to reside a majority of the time as the custodian of the child; provided, that this designation shall not affect either parent's rights and responsibilities under the parenting plan. In the absence of such a designation, the parent with whom the child is scheduled to reside a majority of the time shall be deemed to be the custodian for the purposes of such federal and state statutes.

We conclude that according to the plain language of this subsection, the primary residential parent is the one with "legal custody" for the purpose of interpreting which parent has the "sole right to maintain an action for the expenses and the actual loss of service resulting from an injury to the minor child" as set forth in Tennessee Code Annotated § 20-1-105(b). *See, e.g., Bowers v. City of Chattanooga*, 855 S.W.2d 583, 587 (Tenn. Ct. App. 1992) (determining, prior to enactment of the parenting plan statutory scheme, that although the minor child's father "paid regular child support and visited the child almost every weekend," the mother had "legal custody" as set forth in Tenn. Code Ann. § 20-1-105 because the mother was the named custodian and guardian of the child).

Moreover, Tennessee Code Annotated § 20-1-105(b) provides for a noncustodial parent's right to maintain a cause of action for expenses related to an injury to the extent that the noncustodial parent has paid those expenses. Father, however, does not

challenge Defendants' assertion that he presented no evidence of having paid the Child's medical expenses resulting from the injury at issue. *See Bowers*, 855 S.W.2d at 587 (concluding that although Tennessee Code Annotated § 20-1-105 applied to classify the mother as the parent with "legal custody" of the minor child, the father could recover pursuant to the same statute for the child's medical expenses paid by the father's employer's insurance company as a result of the child's injury).

Finally, assuming, *arguendo*, that Father has waived his right to recover medical expenses in favor of the Child, we conclude that his claim for medical expenses would still fail. In an action brought by a parent as a child's next friend, the child cannot recover for medical expenses except under the rule of waiver adopted in *Smith v. King*, No. Civ.A. 958, 1984 WL 586817 (Tenn. Ct. App. Sept. 21, 1984), and upheld in *Palanki*, 215 S.W.3d at 394. Under the waiver rule, "'a child under circumstances where the parent has acted as next friend may maintain an action for his medical expenses provided that [the parent] has paid for them . . . or is legally obligated to pay them.'" *Palanki*, 215 S.W.3d at 394 (quoting *Smith v. King*, 1984 WL 586817 at *2). In other words, if Father had paid the Child's medical expenses related to the injury, the Child could maintain an action by Father as next friend for medical expenses, provided that Father waived his right to personally receive any judgment recovered for those expenses. In this case, however, Father failed to present any evidence or even to assert that he had paid or will be responsible for the Child's medical expenses related to the injury. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

We conclude that the trial court did not err by finding that Father lacked standing to maintain a claim for medical expenses related to the Child's injury. In addition, to the extent that Father through the instant action may have sought compensation for loss of the Child's service through a claim for loss of the Child's earning capacity during minority, we conclude that the trial court properly found that Father did not have standing to maintain such a claim. *See Wolfe v. Vaughn*, 152 S.W.2d 631, 633 (Tenn. 1941) (distinguishing between damages recoverable by a parent for impairment of the child's earning capacity during minority and damages recoverable by the child for impairment of earning capacity after attaining majority). "[T]he damages peculiar to one of these causes of action cannot properly be recovered in an action based on the other in the absence of any waiver or estoppel." *Id.* We affirm the grant to Defendants of summary judgment as to these claims for recovery.

11

B. Father's Standing to Maintain a Cause of Action as the Child's Next Friend

The remaining issue concerning standing is whether the trial court erred by granting summary judgment to Defendants upon its finding that Father lacked standing to maintain a cause of action as the Child's next friend, upon injury to the Child, for the elements of damage to the Child himself. *See Dudley*, 405 S.W.2d at 469 (explaining that "upon injury to a child . . . another and distinct cause of action arises in favor of the child for the elements of damage to him, such as pain and suffering, disfigurement, etc."). Because the statute relied upon by the trial court, Tennessee Code Annotated § 20-1-105, does not address the injured child's right of action for damages related to his own person, we determine that the trial court erred by finding that this statute barred the Child's negligence claim brought by Father as next friend. The issue before us is therefore narrowed to whether Father, as the noncustodial or alternate residential parent, has the authority to maintain an action on behalf of the Child as the Child's next friend. We determine that under the specific circumstances of this action, he does.

"Minors cannot act for themselves in contracting with counsel and otherwise making provisions to institute [a lawsuit]. They must depend on someone to act for them." *Busby v. Massey*, 686 S.W.2d 60, 63 (Tenn. 1984). Regarding the authority to act on behalf of a minor or incompetent person, Tennessee Rule of Civil Procedure 17.03 provides:

> Whenever an infant or incompetent person has a representative, such as a general guardian, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative, or if justice requires, he or she may sue by next friend. The court shall at any time after the filing of the complaint appoint a guardian ad litem to defend an action for an infant or incompetent person who does not have a duly appointed representative, or whenever justice requires. The court may in its discretion allow the guardian ad litem a reasonable fee for services, to be taxed as costs.

*See also Sullivan ex rel. Wrongful Death Beneficiaries of Sullivan v. Chattanooga Med. Investors, LP*, 221 S.W.3d 506, 510 (Tenn. 2007) ("[A]ll minors have some person, either a guardian or a parent or a next friend, who has the authority to file a lawsuit on their behalf."). As our Supreme Court explained in *Sullivan*, "'the person entitled to commence an action,' refers to the person who suffered the legal wrong or to whom the claim belongs." *Id.* (analyzing the tolling statute, Tenn. Code Ann. § 28-1-106, for persons under a disability because of age or unsound mind on accrual of right). A "next friend" has been defined as "[a] person who appears in a lawsuit to act for the benefit of

12

an incompetent or minor plaintiff, but who is not a party to the lawsuit and is not appointed as a guardian." 1070 BLACK'S LAW DICTIONARY (8th ed. 2004); *see also In re Estate of March v. Levine*, No. 01-A-01-9708-PB00437, 1999 WL 140760 at *3 (Tenn. Ct. App. Mar. 17, 1999) ("A next friend is someone who is capable of protecting the interests of the person under the legal disability, who will be liable for the costs, and against whom the court can make and enforce its orders.").

The Child to date does not have an appointed representative in this matter. Although the only statement in the record made by Mother is an excerpt from her deposition testimony, it is undisputed that she decided not to pursue this negligence action on behalf of the Child. Upon our careful and thorough review of applicable authorities, we find no Tennessee rule of law that would preclude Father, as the Child's parent, from maintaining an action as the Child's next friend. *See, e.g., Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 170 (Tenn. 2011) (analyzing the award of attorney's fees in a suit maintained by the injured child's father as next friend and noting that the child's mother, who was divorced from the father and shared "joint custody" of the child with him, had filed an identical suit as next friend that was subsequently dismissed as collateral by the trial court); *see also Wright ex rel. Wright v. Wright*, No. M2007-00378-COA-R3-CV, 2007 WL 4340871 at *1 (Tenn. Ct. App. Dec. 12, 2007) ("During these proceedings the trial court appointed [an attorney] as [the child's] guardian ad litem. It was of the opinion that appointment of a guardian ad litem was necessary because of concern that there were 'competing parents.'").

We therefore reverse the trial court's grant of summary judgment to Defendants as to the Child's negligence claim pertaining to damages sought for the alleged injury to his person, including in this case the Child's averments of permanent impairment, pain and suffering, and loss of earning capacity in adulthood. We remand for further proceedings consistent with this opinion. In reaching this decision, we emphasize that our analysis pertains only to Father's authority to maintain a negligence action on behalf of the Child as next friend. We make no determination regarding the merits of the Child's negligence claim against Defendants.

### V. Motion to Join Mother as Involuntary Plaintiff

Father also contends that the trial court erred by declining to address his Tennessee Rule of Civil Procedure 19.01 motion to join Mother as an involuntary plaintiff. Having determined that Father has the authority to maintain an action on behalf of the Child as next friend, we further determine that he has the authority to do so without joining Mother as a plaintiff. *See* Tenn. R. Civ. P. 17.03. Father's motion to join Mother as an involuntary plaintiff is therefore relevant only insofar as Father may be attempting

to recover, on his own behalf, medical expenses and compensation for alleged loss of the Child's service. *See* Tenn. Code Ann. § 20-1-105(b).

Tennessee Rule of Civil Procedure 19.01 provides:

> **19.01.  Persons to Be Joined if Feasible.** – A person who is subject to service of process shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest.  If the person has not been so joined, the court shall order that the person be made a party.  If the person properly should join as a plaintiff but refuses to do so, he or she may be made a defendant, or in a proper case, an involuntary plaintiff.

This Court has previously explained that "'Rule 19 concerns compulsory joinder of persons . . . to an action that has been brought by a party otherwise entitled to bring the action.'"  *Danelz v. Gayden*, No. W2010-02308-COA-R3-JV, 2011 WL 2567742 at *1 n.2 (Tenn. Ct. App. June 29, 2011) (quoting with approval Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 6-6(b)) (emphasis added).  Having determined that Father is barred from bringing a claim on his own behalf for expenses and loss of the Child's service by operation of Tennessee Code Annotated § 20-1-105(b), we further determine that Father has no authority to demand compulsory joinder of Mother as a plaintiff.  This issue is without merit.

## VII.  Conclusion

The decision of the trial court is affirmed in part and reversed in part.  We affirm the trial court's grant of summary judgment to Defendants regarding any negligence claim made by Father on his own behalf seeking medical expenses and loss of the Child's service, including the Child's earning capacity during minority.  We reverse the grant of summary judgment to Defendants regarding the Child's negligence claim seeking damages for alleged injury to his own person, including damages sought for permanent impairment, pain and suffering, and loss of earning capacity in adulthood.  Costs on appeal are assessed equally to the appellant, Dion Russell (as next friend of Kingston Neale), and the appellees, United Way of Greater Kingsport and Boys and Girls Club of

Greater Kingsport.  This case is remanded to the trial court, for further proceedings consistent with this opinion and collection of costs assessed below.


 

 

_____

THOMAS R. FRIERSON, II, JUDGE