Danny Leon BOWERS, a minor b/n/f Danny BOWERS and Carmen Hudgins, and Danny Bowers and Carmen Hudgins, Individually, Plaintiffs/Appellees,

v.

CITY OF CHATTANOOGA, Bret A. Newmyer and John Newmyer, Defendants/Appellants.

Court of Appeals of Tennessee, Western Section.

Dec. 22, 1992.

Application for Permission to Appeal Denied by Supreme Court April 26, 1993.

**584**

Randall L. Nelson, City Atty., William Shelley Parker, Jr. and Phillip A. Noblett, Sp. Counsel, Chattanooga, for defendant/appellant City of Chattanooga.

Stephen T. Greer, Greer & Smith, Dunlap, Charles D. Paty, Paty, Rymer & Ulin, Chattanooga, for plaintiffs/appellees.

TOMLIN, Presiding Judge, Western Section.

This opinion represents "Chapter II" in this personal injury action. The minor plaintiff, Danny Leon Bowers, his mother, Carmen Hudgins, and his father, Danny Bowers, Sr., brought suit against the City of Chattanooga ("City" or "defendant") under the Tennessee Governmental Tort Liability Act ("GTLA") to recover for injuries sustained when the minor plaintiff was struck by an automobile shortly after alighting from defendant's school bus.[1] Following a bench trial, the Hamilton County Circuit Court returned a judgment for the minor plaintiff, his mother and father in the sums of $100,000, $5,000 and $30,000, respectively. On appeal, this Court dismissed the suit, holding that the GTLA provided City with immunity from liability for any alleged negligent acts. All other issues raised by plaintiffs were pretermitted.

Thereafter, the Supreme Court granted plaintiffs' application for permission to appeal to determine whether T.C.A. § 29–20–205(1) protected City from a suit alleging negligence by a public school bus driver. Following a hearing on appeal, the Supreme Court found that there were two governmental acts that were proximate causes of the accident, one of which arose out of a "discretionary function" and one of which did not arise from a "discretionary function" under T.C.A. § 29–20–205(1). For a more thorough discussion of this issue see *Bowers by Bowers v. City of Chattanooga*, 826 S.W.2d 427 (Tenn.1992).

The judgment of this Court was reversed and the cause was remanded to us to con-

**1.** The automobile that struck the minor plaintiff was driven by Bret A. Newmyer and owned by John Newmyer. They were originally named as defendants but have settled with plaintiffs.

sider and dispose of the issues pretermitted in our earlier opinion. City contends the trial court erred in holding that: (1) the minor plaintiff's mother was not guilty of contributory negligence; (2) a non-custodial parent, Danny Bowers, Sr., was entitled to recover as damages an amount in excess of his actual out-of-pocket expenses pertaining to his son's injuries, notwithstanding the provisions of T.C.A. § 20–1–105; (3) plaintiffs Hudgins and Bowers, Sr. were entitled to recover damages for future medical expenses; and (4) the amount of damages that minor plaintiff was entitled to recover was not limited by the GTLA to $40,000. For the reasons stated herein, we are of the opinion that the trial court erred in awarding damages for future medical expenses to the minor plaintiff's mother and father. Otherwise, the judgment of the trial court is affirmed.

As this case was tried below without the intervention of a jury, our scope of review on appeal is de novo upon the record in the trial court. The findings of the trial court come to us with a presumption of correctness, and, absent an error of law, unless we find that the evidence preponderates against these findings, we must affirm. Rule 13(d) T.R.A.P.

Danny Bowers was six years old and in the first grade of the Chattanooga School system when the accident occurred. He was struck by an automobile as he started to cross Dodds Avenue shortly after alighting from a school bus owned and operated by City. Danny's mother and father were not married at the time of Danny's birth and had remained unmarried up to and at the time of the accident. Since his birth Danny has lived continuously with his mother. At the time of the accident Danny and his mother were living with his grandmother on the east side of Dodds Avenue, across the street from the Pro Re Bona Day Care Center.

Dodds Avenue is a busy four-lane street that runs north-south. Pro Re Bona Daycare Center is located at the northwest corner of the intersection of Dodds Avenue and Eighteenth Street, which runs east-west. At this intersection Eighteenth is a "stop" street, and Dodds is the through street, without any traffic control. The entrance to Pro Re Bona is located on the south or Eighteenth Street side of the building.

A school bus stop had been established by the Chattanooga school system transportation division at Pro Re Bona for several years. The precise location of the stop was not designated. During the year of the accident, with but one exception, the after-school bus made two stops at this location. It stopped first on Dodds Avenue to permit the children who were going to cross Dodds to the east to leave the bus. It then pulled around the corner on Eighteenth Street and stopped at the entrance to the daycare center. Each time the bus would stop traffic with its warning devices until the students had crossed the street.

The record reflects that Danny rode the bus to school during both his kindergarten and first grade years at Ridgedale. On school days Danny would be accompanied by his mother or grandmother to and from the bus stop. They would walk him across Dodds in the morning to the Pro Re Bona corner, and meet him there in the afternoon to walk back across Dodds from Pro Re Bona to his home. The regular driver of the afternoon school bus testified that he observed that parents would wait for their children on the corner adjacent to the Pro Re Bona nursery on the west side of Dodds and would escort their children across Dodds after the bus arrived and stopped.

Because of overcrowded conditions and complaints by the regular driver of rowdiness on his bus, the transportation department took steps to reduce overcrowding and eliminate some of the disturbance on the bus. On the day of the accident, those students who normally exited the bus at the Pro Re Bona stop, including the minor plaintiff, were assigned to a different bus and driver. The route served by this bus was shortened, resulting in it arriving at Pro Re Bona some ten minutes earlier than under the regular schedule. Mother had no advance knowledge that this change had taken place.

On that day, when the bus arrived at Pro Re Bona, it did not stop on Dodds Avenue, but instead turned the corner on Eighteenth Street and stopped there at the day-care center entrance. The minor plaintiff exited the bus at that time and walked eastward toward Dodds Avenue. Due to the change in schedule his mother was not there, and the minor plaintiff began crossing Dodds with other students. At that time mother had just arrived at the east side of Dodds and Eighteenth. Her shouts to her son to stop were of no avail, and he was struck by an automobile.

## I. MOTHER'S ALLEGED CONTRIBUTORY NEGLIGENCE

■ The trial court found that Mother was not guilty of contributory negligence. City contends that she was guilty of contributory negligence in failing to be at the bus stop in time to enable her to escort her minor son across Dodds Avenue.

Mother testified that the bus normally arrived at the Pro Re Bona stop during the early part of this school year around 3:50 to 4:00 p.m. each day. She stated she would normally leave home at 3:30, walk down Dodds Avenue to Eighteenth where she would cross over to the west side of Dodds and wait at the corner of the Pro Re Bona nursery for the bus to arrive. She further stated that either she or her mother had always been there to meet Danny and his sister; that neither she nor her mother had ever been late to meet them; that they always met the children on the west side of Dodds, and never waited for the children to cross to the east side of Dodds by themselves. She also testified she had instructed Danny not to cross Dodds Avenue, or any street for that matter, by himself, and that he had never tried to cross Dodds by himself prior to this accident.

On the day of the accident, Mother was standing on the front porch of her home, located on the east side of Dodds, a short distance from Eighteenth Street. Her clock showed 3:30 p.m. About that time she observed the school bus turning west onto Eighteenth Street off of Dodds. She

stated that she "took off running" to try to get to the corner of Eighteenth and Dodds to meet Danny, but she was too late. She observed a couple of the children run across Dodds, and then Danny stepped out into the street and was hit.

The trial court found that from all the proof the accident happened at approximately 3:43 p.m. This was seven to seventeen minutes earlier than the usual time of arrival of the bus at this particular stop. The evidence in this record does not preponderate against the trial court's finding that Mother was not guilty of contributory negligence under the circumstances.

## II. THE AWARDING OF DAMAGES TO A NON-CUSTODIAL PARENT

■ The trial court awarded as damages to Danny Bowers, Sr. some $26,801.16, representing medical expenses he testified he incurred on behalf of the minor plaintiff as a result of this accident. City contends this was error, asserting that as a "non-custodial parent" Mr. Bowers was entitled only to compensation for his actual out-of-pocket expenses, which amounted to $600. The proof showed that the balance of the expenses incurred were paid by Bowers, Sr.'s health insurance. Bowers, Sr. testified that he carried both Danny and Danny's sister as covered family members on his policy.

City contends that this action of the court was contrary to the provisions of T.C.A. § 20-1-105, the pertinent part of which reads as follows:

(b) In case the father and mother of such minor child are living apart and one parent has exclusive legal custody of such child, the parent with legal custody shall have the sole right to maintain an action for the expenses and the actual loss of service resulting from an injury to such minor child, except that the non-custodial parent in such case shall have a right to maintain or join an action brought under this section, for the expenses resulting from an injury to such minor child to the extent the noncustodial parent has paid such expenses.

There appears to be no dispute as to whether Bowers, Sr. and Ms. Hudgins cohabited together after both minor plaintiff and his sister were born. After both Danny and his older sister were born, Hudgins and Bowers, Sr. lived together for a few years. Bowers, Sr. acknowledged Danny as his child and testified that he voluntarily paid regular child support and visited the child almost every weekend. He further testified that when either child had become ill and the mother could not take off from work to take the child to the doctor or the hospital, that, if available, he did so.

Bowers, Sr. also stated that he carried both children as insureds on his health and dental insurance policies with his employer. At trial, Bowers' counsel stated for the record that Bowers Sr.'s employer deducted a sum of Bowers' earnings monthly to cover in part the insurance provided. Bowers, Sr. testified without contradiction that his son's hospital bill was charged to him.

Under the circumstances, the parties being unwed, with the mother being the custodian and guardian of the child, we are of the opinion that she has "legal custody" and that T.C.A. § 20–1–105 would be applicable. However, the medical expenses were incurred in the name of Bowers, Sr. and they were paid on his behalf by his employer's insurance company, who insured both him and Danny. Although it is not in the record, there is a likelihood that the insurance company, by the terms and provisions of its policy, was subrogated to the rights of Bowers, Sr., and would be reimbursed in the event he recovered any or all of the medical expenses they paid. However, this is a matter between Bowers, Sr. and his insurance company. City should not benefit by the fact that Bowers, Sr. did not mortgage his home to pay these expenses as opposed to having them paid by an insurance policy for which he paid at least a portion of the premium. This is particularly true since we do not have the collateral source rule in this state. Accordingly, we resolve this issue in favor of the plaintiff.

### III. *FUTURE MEDICAL EXPENSES*

The trial court awarded Ms. Hudgins $5,000 and Mr. Bowers, Sr. $3,198.84 respectively for "future medical and rehabilitative expenses." City contends there is no evidence in the record to support the amounts awarded. Plaintiff's expert witness, Dr. Engum, a clinical psychologist who is not a medical doctor, testified at length about the various types of rehabilitation needed to assist the minor plaintiff to recover from this accident, which he said left him with impaired mental capacity brought about by a brain injury. Dr. Engum recommended that plaintiff begin treatment at a rehabilitation institution in Chattanooga, undergoing "multi-disciplinary rehabilitation, including physical therapy and cognitive rehabilitation." When asked about the probable cost of such treatment, Dr. Engum testified as follows:

Q. Are you versed at all in terms of cost of that type of therapy? Do you know what—

A. It's expensive.

Q. Would you be able to give a reasonable projection on, let's say, an annual basis for that type of therapy?

A. I don't think I'm the person who should do that.

There is no additional evidence in this record as to the need for such treatment or as to its cost. In essence, Dr. Engum said the treatment is "expensive" and that he was not qualified to speculate as to what that cost could amount to. In our opinion, this testimony is conjectural, and the cost of same is purely speculative. There is nothing in this record to support these awards to the two plaintiffs. *See Kincaid v. Lyerla,* 680 S.W.2d 471 (Tenn.App.1984). Accordingly, the award of damages for future medical expenses to Ms. Hudgins and Bowers, Sr. is reversed.

### IV. *THE AMOUNT OF MINOR PLAINTIFF'S JUDGMENT*

The trial court awarded the minor plaintiff the sum of $100,000 as damages. City contends this was error. The basis for City's contention is that, at the time of the accident, the statutory maximum amount

of recovery pursuant to the GTLA was set forth in T.C.A. § 29–20–403(b)(1)(A), which reads in pertinent part as follows:

**Liability insurance authorized—Limits—Limits of liability for self-insuring entities—** ... (b) Every policy or contract of insurance purchased by a governmental entity as authorized by this chapter shall provide:

(1)(A) Minimum limits of not less than forty thousand dollars ($40,000) for bodily injury or death of any one (1) person in any one (1) accident ... provided, that in cases arising out of the ownership, maintenance, and use of automobiles, the minimum limit shall be not less than one hundred thousand dollars ($100,000) because of bodily injury or death of one (1) person in any one (1) accident, ...

In Bowers I, the Supreme Court settled the issue as to what the proximate causes of this accident were, and specifically what the proximate cause was that did not enjoy the umbrella of governmental immunity. The Court stated:

The fact that the bus was not utilized to stop traffic for the children crossing Dodds Avenue was a cause in fact of the accident; had the traffic been stopped, Danny would not have been struck, notwithstanding the absence of his mother. Further, that a child might be so struck is a foreseeable consequence of a school bus's failure to assist a child's crossing of an intersection. Therefore, the driver's failure to stop was a legal proximate cause of Danny's injuries.

826 S.W.2d at 433.

The crux of the argument advanced by City was that the accident did not arise out of the "use" of the school bus. We have not found a reported case from this jurisdiction construing the "arising out of the use" language found in T.C.A. § 29–20–403. However, we have found cases from other states interpreting governmental tort liability acts, specifically the application of the phrase "resulting from the 'operation' of a motorized vehicle or a motor vehicle." In *Teters v. Kansas City Public Service Company*, 300 S.W.2d 511 (Mo.1957), the Missouri Supreme Court held that opening a delivery truck's doors was "operating" a vehicle under its statute. In *Wells v. Southern Michigan Prison*, 261 N.W.2d 245 (Mich.App.1977), the Michigan Court of Appeals stated: " 'Negligent operation' of a motor vehicle may occur even though the vehicle is standing still as long as it is being used or employed in some specific function or to produce some desired work or effect." *Id.* at 246.

One of City's school bus drivers testified on cross-examination that one of the uses of a school bus by City is to provide protection for children crossing busy streets and intersections. In essence, this accident arose out of the use of the city school bus in such a manner that one of its intended and necessary purposes, the protection of the school children, was thwarted. We find that this issue is without merit.

Except as hereinabove noted, the judgment of the trial court is in all other respects affirmed. Costs in this cause on appeal are taxed to City, for which execution may issue if necessary.

CRAWFORD and FARMER, JJ., concur.