# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 19, 2016 Session

## JEAN DEDMON v. DEBBIE STEELMAN, ET AL.

**Interlocutory Appeal from the Circuit Court for Crockett County**
**No. 3228     Clayburn Peeples, Judge**

---

**No. W2015-01462-COA-R9-CV – Filed June 2, 2016**

---

This interlocutory appeal requires review of a ruling on a motion *in limine* in a personal injury case. Prior to trial, the plaintiffs submitted expert testimony from a treating physician to establish the reasonableness of their claimed medical expenses. The defendants filed a motion *in limine* seeking to exclude evidence of what they deemed "unreasonable" medical expenses. They argued that the Tennessee Supreme Court's decision in *West v. Shelby County Healthcare Corporation*, 459 S.W.3d 33 (Tenn. 2014), established a new standard in Tennessee for determining the reasonable amount of medical expenses as a matter of law. The trial court granted the defendants' motion *in limine*, thus excluding the testimony of the treating physician. For the following reasons, the trial court's order is reversed and this matter is remanded for further proceedings.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission; Judgment of the Circuit Court Reversed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., joined. JOE G. RILEY, Sp. J. filed a concurring opinion.

Glenn Keith Vines, Jr., Kevin Neil Grahm, and Mark Norman Geller, Memphis, Tennessee, for the appellant, Jean Dedmon.

Melanie M. Stewart, Memphis, Tennessee, for the appellees, Debbie Steelman and Danny T. Cates, Sr.

W. Bryan Smith, Memphis, Tennessee, John Vail, Washington, D.C. and Brian G. Brooks, Greenbrier, Arkansas, for the *Amicus Curiae* Tennessee Association for Justice.

Bradford Box and Adam Phillip Nelson, Jackson, Tennessee, for the *Amicus Curiae* Tennessee Defense Lawyers Association.

# OPINION

## I. Facts & Procedural History

Jean and Fred Dedmon (collectively, "Plaintiffs") filed this lawsuit against John T. Cook, seeking to recover for injuries arising out of a car accident. Plaintiffs alleged that Mrs. Dedmon incurred medical expenses totaling $52,482.87, and they attached her medical bills to the complaint. Defendant Cook filed an answer specifically denying that the medical bills attached to the complaint were reasonable or necessary.

Defendant Cook died during the litigation, and Plaintiffs filed an amended complaint naming as defendants the co-representatives of his estate, Debbie Steelman and Danny Cates, Sr. ("Defendants"). The amended complaint sought general compensatory damages but did not reference or itemize the previously attached medical bills. No medical bills were attached to the amended complaint.

Plaintiffs subsequently deposed one of Mrs. Dedmon's treating physicians -- neurological surgeon Vaughan Allen. Dr. Allen testified that he had reviewed Mrs. Dedmon's medical bills and found them to be appropriate, reasonable, and necessary. Dr. Allen's deposition was filed in the trial court with the medical bills attached as exhibits.

On December 19, 2014, the Tennessee Supreme Court issued its decision in *West v. Shelby County Healthcare Corp.*, 459 S.W.3d 33 (Tenn. 2014). Four weeks later, Defendants filed a motion *in limine* seeking to exclude "evidence of unreasonable medical charges" based on the supreme court's *West* decision. Defendants acknowledged that *West* involved interpretation of the Tennessee Hospital Lien Act, Tennessee Code Annotated §§ 29-22-101 to -107. The parties acknowledge that this case does not involve a hospital lien. Still, Defendants claimed that *West* defined the meaning of "reasonable" medical expenses for tort cases by "set[ting] forth a new standard in Tennessee, as a matter of law." Defendants argued that the medical bills previously submitted by Plaintiffs and discussed by Dr. Allen should be disregarded, pursuant to *West*, and the amounts the medical providers accepted in satisfaction of the bills should be deemed the "reasonable" medical expenses instead. Specifically, Defendants argued,

> The Supreme Court in *West* has clearly stated that the reasonable medical expenses are defined as that which the medical provider accepts from medical insurance, as a matter of law. Therefore, the Plaintiff should not be allowed to introduce proof of any medical expense in excess of the amount accepted by her medical providers as payment in full.

According to Defendants' calculations, Plaintiffs' health insurer only paid $18,255.42 to

satisfy Mrs. Dedmon's medical bills, so that amount, according to Defendants, was the reasonable amount of her medical expenses.[1]

Along with their motion *in limine*, Defendants also filed a "Notice of Intent to Rebut Presumption Pursuant to T.C.A. § 24-5-113." They again claimed that the "non-discounted" medical bills provided by Plaintiffs were not reasonable under the *West* standard.

Plaintiffs filed a response in opposition to Defendants' motion *in limine*. Plaintiffs asserted that Mrs. Dedmon had incurred, by that time, $57,668.87 in medical expenses, as reflected by the original, undiscounted charges listed on her medical bills. They noted Dr. Allen's testimony that these bills were reasonable and necessary for Mrs. Dedmon's treatment. Plaintiffs argued that *West* was confined to the "the limited purview of the Tennessee Hospital Lien Act" and did not define reasonableness for medical expenses in personal injury cases. Plaintiffs claimed that such an expansive reading of *West* "would violate statutes, legislative intent, established case law, the Collateral Source Rule, public policy, and would lead to widely disparate, unfair results." Aside from *West*, Plaintiffs argued that existing Tennessee statutes and caselaw permitted them to prove the reasonableness and necessity of their medical expenses through the testimony of Dr. Allen, and therefore, the motion *in limine* to exclude such evidence should be denied.

After a hearing, the trial court entered an order granting the Defendants' motion *in limine* to exclude Plaintiffs' evidence of "unreasonable medical charges." The trial judge characterized *West* as an effort by the Tennessee Supreme Court "to say we are not going to allow the subterfuge that the medical community uses with regard to insurance and expenses to sully the court system, if you will." The trial judge acknowledged that *West* was decided under the Hospital Lien Act but said, "I cannot imagine that they would use any other logic in this situation than they used in that situation; so I'm granting [the] motion." However, the trial court also granted Mrs. Dedmon permission to seek an interlocutory appeal to this Court.[2] On August 31, 2015, this Court entered an order granting Mrs. Dedmon's application for an interlocutory appeal pursuant to Rule 9 of the

---

[1]Defendants itemized the medical bills within their motion but did not attach the actual bills or documents reflecting the reduced amounts paid. However, Plaintiffs did not dispute that their bills were adjusted, resulting in lower payments by their insurer. Instead, Plaintiffs argued that they should receive the benefit of the adjustments rather than Defendants. Plaintiffs acknowledged that the introduction of evidence regarding their insurance contract "would lead to a lower judgment."

[2]The trial court granted permission to "Plaintiff, Jean Dedmon," to seek an interlocutory appeal, with no mention of co-plaintiff Mr. Dedmon. In the brief filed on behalf of the appellant on appeal, Mrs. Dedmon represents that Mr. Dedmon's claim was voluntarily dismissed without prejudice on November 14, 2014. However, the record on appeal does not contain any order reflecting such a dismissal. In any event, because the trial court and this Court granted permission to appeal only to Mrs. Dedmon, we will refer to her singularly as "Plaintiff" for the remainder of this opinion.

Tennessee Rules of Appellate Procedure.

## II. ISSUE PRESENTED

Plaintiff presents the following issue for review on appeal:

Whether the Supreme Court's decision in *West v. Shelby County Healthcare Corp.*, 459 S.W.3d 33 (Tenn. 2014) is limited to the Hospital Lien Act or is it also applicable to personal injury actions filed directly against the alleged tortfeasor?

For the following reasons, we reverse the decision of the circuit court and remand for further proceedings.[3]

## III. STANDARD OF REVIEW

This interlocutory appeal stems from an order of the trial court granting a motion *in limine*. This Court reviews a trial court's decision to admit or exclude evidence, including a ruling on a motion *in limine*, under the abuse of discretion standard of review. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004); *Allen v. Albea*, 476 S.W.3d 366, 377 (Tenn. Ct. App. 2015). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision that is against logic or reasoning that causes an injustice to the party complaining. *Mercer*, 134 S.W.3d at 131 (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). "'A trial court that premises its analysis on an erroneous understanding of the governing law acts outside its discretion.'" *Wicker v. Comm'r*, 342 S.W.3d 35, 37 (Tenn. Ct. App. 2010) (quoting *Gov't Employees Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *5-6 (Tenn. Ct. App. June 29, 2007)).[4] Thus, the abuse of discretion standard requires us to determine whether the trial court's discretion was guided by an erroneous legal conclusion. Whether the trial court used an incorrect legal standard in making its decision is a question of law reviewed *de novo*. *Wicker*, 342 S.W.3d at 37.

---

[3]We acknowledge and appreciate the excellent *amicus curiae* briefs submitted by the Tennessee Defense Lawyers Association and the Tennessee Association for Justice.
[4]When a trial court applies an incorrect legal principle, reversal is required "'even though such a reversal does not indicate any 'abuse' as that word is commonly understood.'" *Wicker*, 342 S.W.3d at 37 (quoting *Bloodworth*, 2007 WL 1966022, at *5-6).

## IV. DISCUSSION

### A. *Existing Tennessee Law on Damages*

"'A person who is injured by another's negligence may recover damages from the other person for all past, present, and prospective harm.'" *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 267 (Tenn. 2015) (quoting *Singh v. Larry Fowler Trucking, Inc.*, 390 S.W.3d 280, 287-88 (Tenn. Ct. App. 2012)). An award of damages is intended to make a plaintiff whole and compensates the plaintiff for damages or injury caused by a defendant's wrongful conduct. *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 419 (Tenn. 2013) (citing *Inland Container Corp. v. March*, 529 S.W.2d 43, 44 (Tenn. 1975)). "The party seeking damages has the burden of proving them." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999) (citing *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982)). The amount of damages to be awarded, where the amount is within the limits set by law, is a question of fact. *Beaty v. McGraw*, 15 S.W.3d 819, 828-29 (Tenn. Ct. App. 1998) (citing *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 594 (Tenn. 1994); *Reagan v. Wolsieffer*, 34 Tenn.App. 537, 542, 240 S.W.2d 273, 275 (1951)).

"A plaintiff may be compensated for any economic or pecuniary losses that naturally result from the defendant's wrongful conduct," including past medical expenses. *Meals*, 417 S.W.3d at 419. "In personal injury actions such as this one, a plaintiff may recover only those reasonable medical expenses that were necessary to treat the injury caused by the defendant's negligence." *Street v. Levy (Wildhorse) Ltd. P'ship*, No. M2002-02170-COA-R3-CV, 2003 WL 21805302, at *4 (Tenn. Ct. App. Aug. 7, 2003). In other words, an injured plaintiff is entitled to recover for "reasonable and necessary medical expenses" associated with the treatment of the injury. *Stricklan v. Patterson*, No. E2008-00203-COA-R3-CV, 2008 WL 4791485, at *4 (Tenn. Ct. App. Nov. 4, 2008); *Roberts v. Davis*, No. M2000-01974-COA-R3-CV, 2001 WL 921903, at *4 (Tenn. Ct. App. Aug. 7, 2001). Recovery may be denied for expenses that the jury determines were unreasonable or unnecessary. *Watson v. Payne*, 359 S.W.3d 166, 169-70 (Tenn. Ct. App. 2011) (citing *Brown v. Chesor*, 6 S.W.3d 479, 484 (Tenn. Ct. App. 1999)).

The injured plaintiff bears the burden of proving that the medical expenses he or she is seeking to recover are necessary and reasonable. *Borner v. Autry*, 284 S.W.3d 216, 218 (Tenn. 2009). "In all but the most obvious and routine cases, plaintiffs must present competent expert testimony to meet this burden of proof." *Id.*; *see also Monypeny v. Kheiv*, No. W2014-00656-COA-R3-CV, 2015 WL 1541333, at *27 (Tenn. Ct. App. Apr.

5

1, 2015) (*no perm. app. filed*); *Al-Athari v. Gamboa*, No. M2013-00795-COA-R3-CV, 2013 WL 6908937, at *3 (Tenn. Ct. App. Dec. 30, 2013). Generally, in order to recover for medical expenses, "expert opinion must be offered regarding the reasonableness and necessity of the physician's services and charges." *Stricklan*, 2008 WL 4791485, at *4 (citing *Roberts*, 2001 WL 921903 at * 4). "A physician who is familiar with the extent and nature of the medical treatment a party has received may give an opinion concerning the necessity of another physician's services and the reasonableness of the charges." *Long v. Mattingly*, 797 S.W.2d 889, 893 (Tenn. Ct. App. 1990) (citing *Employers Ins. of Wausau v. Carter*, 522 S.W.2d 174, 176 (Tenn. 1975)). In order to be qualified to render these opinions, the physician must demonstrate "(1) knowledge of the party's condition, (2) knowledge of the treatment the party received, (3) knowledge of the customary treatment options for the condition in the medical community where the treatment was rendered, and (4) knowledge of the customary charges for the treatment." *Id.* (citing *Nash v. Carter*, App. No. 87-192-11, Slip op. at 13, 1987 WL 19312 (Tenn. Ct. App. Nov. 4, 1987)).

Tennessee Code Annotated section 24-5-113(a) assists plaintiffs "for whom the expense of deposing an expert may exceed the value of the medical services for which recovery is sought." *Borner*, 284 S.W.3d at 218. The statute provides a rebuttable presumption that medical bills itemized in and attached to the complaint are necessary and reasonable if the total amount of such bills does not exceed $4,000. *Id.* at 217. However, the presumption may be rebutted by proof contradicting either the necessity or reasonableness of the medical expenses. *Id.* at 218. Alternatively, subsection (b) of the statute provides a rebuttable presumption of reasonableness where a plaintiff serves upon the defendant at least 90 days prior to the date set for trial an itemization or copies of medical bills that were paid or incurred. *Iloube v. Cain*, 397 S.W.3d 597, 604 (Tenn. Ct. App. 2012).

### B. Litigation in other Jurisdictions

Historically, the "reasonableness" of medical expenses was rarely controversial. Michael K. Beard & Dylan H. Marsh, *Arbitrary Healthcare Pricing & the Misuse of Hospital Lien Statutes by Healthcare Providers*, 38 Am. J. Trial Advoc. 255, 272 (2014). Physicians' testimony that medical charges were customary and reasonable was typically accepted proof of reasonableness. *Id.* at 273. In recent years, however, the issue of what constitutes a reasonable medical charge or expense has been the subject of increased litigation due to the increased involvement of governmental payors, the complexity of health care reimbursement provisions, financial pressures on hospitals, and the significance of medical expense recovery in personal injury litigation. *Id.*

Several courts have recently considered the issue of how to determine the reasonable value of medical services when the injured plaintiff's medical expense is paid by an insurer or government payor at a discounted rate.[5]  For instance, the California Supreme Court has held that an injured person may not recover as economic damages for past medical expenses the undiscounted sum stated in the provider's bill but never paid by or on behalf of the injured person, as damages are awarded to compensate for loss, and the injured person does not suffer any economic loss in that amount.  *Howell v. Hamilton Meats & Provisions, Inc.*, 257 P.3d 1130, 1133 (Cal. 2011).  Conversely, the Supreme Court of Appeals of West Virginia has held that a plaintiff may recover the entire reasonable value of medical services necessarily required by the injury, and he or she is not limited to the expenditures actually made or the obligations incurred.  *Kenney v. Liston*, 760 S.E.2d 434, 446 (W. Va. 2014).  The West Virginia court reasoned that the tortfeasor should not receive the benefit of any reduced, discounted, or written-off amounts.  *Id.*  Some courts have formulated rules that fall between these two approaches.  For example, the Ohio Supreme Court has held that both the amount billed and the amount paid should be allowed into evidence to enable the jury to determine the reasonable value of medical services at either of those amounts or some amount in between.[6]  *Robinson v. Bates*, 857 N.E.2d 1195, 1200 (Ohio 2006).  Some state legislatures have addressed the issue as well.  *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 41.0105 (providing that "recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant").

---

[5]The "charge master" or billed rate is vastly different than the amount actually paid by insurers.  *See* Todd R. Lyle, *Phantom Damages and the Collateral Source Rule: How Recent Hyperinflation in Medical Costs Disturbs South Carolina's Application of the Collateral Source Rule*, 65 S.C. L. Rev. 853, 877 (2014) (reporting that list prices are at least double and may be up to eight times what the hospital accepts from Medicare, Medicaid, health maintenance organizations, or private insurers as payment in full for the same service); George A. Nation III, *Determining the Fair and Reasonable Value of Medical Services: The Affordable Care Act, Government Insurers, Private Insurers and Uninsured Patients*, 65 Baylor L. Rev. 425, 431 (2013) (reporting that discounts from charge master prices given to insurers average overall about 62 percent).  In addition, some hospitals voluntarily discount the bills of uninsured patients to bring them closer to the contractually discounted reimbursement rates.  65 Baylor L. Rev. at 435.  According to one author, less than five percent of patients, nationally, actually pay the full amount.  65 S.C. L. Rev. at 867.

[6]As some courts have noted, allowing evidence that a medical bill was satisfied for a lower amount does not necessarily require evidence that the payment was made by a collateral source such as insurance.  For example, the Supreme Court of Kansas explained that a jury could hear that "the hospital will accept $5,000 to satisfy its bill of $70,000," or "$5,000 has paid this $70,000 bill in full," without being told of the source of the payment.  *Martinez v. Milburn Enterprises, Inc.*, 233 P.3d 205, 226 (Kan. 2010).  The Supreme Court of Indiana similarly held that "adjustments or accepted charges for medical services may be introduced into evidence without referencing insurance."  *Stanley v. Walker*, 906 N.E.2d 852, 858 (Ind. 2009).

It is not necessary for purposes of this opinion to catalog the various other approaches taken in additional jurisdictions. It suffices to say that the subject is hotly disputed, and courts have reached many different conclusions on the issues involved, often in divided opinions. *See* 2 *Stein on Personal Injury Damages Treatise* 7:36 (3d ed.) ("there is no consensus on the appropriate rule among the [] courts that have reached the question").[7]

## C. The Tennessee Supreme Court's <u>West</u> Decision

*West* involved the interpretation and application of Tennessee's statutes governing hospital liens. *West*, 459 S.W.3d at 41. The hospital at issue treated injured patients and received from the patients' insurance companies the full amount of the *adjusted* charges for the patients' care in accordance with the insurance companies' existing contracts with the hospital. *Id.* at 37. However, the hospital also attempted to use hospital liens to pursue payment of the *unadjusted* cost of the medical services from any third-party tortfeasors who caused the injuries to the patients. *Id.* If the hospital was able to collect the full unadjusted cost from a third-party tortfeasor, directly or from the patient's recovery from the third-party tortfeasor, it refunded any payments received from the patient's insurance company and released its lien. *Id.* at 38.

Patients filed suit to challenge this practice. The controlling provision of the Hospital Lien Act provided:

---

[7]In other contexts, Tennessee courts have acknowledged the separation between amounts billed by medical providers and the amounts actually accepted by medical providers, with varying results. *See, e.g.*, *State v. Moffitt*, No. W2014-02388-CCA-R3-CD, 2016 WL 369379, at *6 (Tenn. Crim. App. Jan. 29, 2016) (*perm. app. pending*) (holding that a defendant was not required to pay restitution for a victim's medical expenses in the amount shown on the victim's hospital bill because the amount was either covered by insurance or "written off" by the hospital, so the victim suffered no actual loss); *River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.*, 173 S.W.3d 43, 60 (Tenn. Ct. App. 2002) (involving a claim of quantum meruit or unjust enrichment based on emergency services provided by a hospital and concluding that a "reasonable" rate for the medical services should be set based on consideration of numerous factors, including the hospital's full standard rate and the reimbursement rate customarily paid by other providers, as both rates were pertinent but neither was conclusive or determinative); *State Auto. Mut. Ins. Co. v. Hurley*, 31 S.W.3d 562, 563-66 (Tenn. Workers Comp. Panel 2000) (holding that a worker's compensation plaintiff was not entitled to receive damages for the full undiscounted amount of her medical bills when her insurer paid only a fraction of that amount in full settlement of the total bill); *see also Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 198 (Tenn. 2001) (holding that various factors should be considered to determine the "reasonable value" of medical goods and services provided by a hospital to a patient in the absence of an enforceable contract, including "the hospital's internal factors as well as the similar charges of other hospitals in the community").

Every person, firm, association, corporation, institution, or any governmental unit, including the state of Tennessee, any county or municipalities operating and maintaining a hospital in this state, shall have a lien *for all reasonable and necessary charges* for hospital care, treatment and maintenance of ill or injured persons upon any and all causes of action, suits, claims, counterclaims or demands accruing to the person to whom such care, treatment or maintenance was furnished, or accruing to the legal representatives of such person in the case of such person's death, on account of illness or injuries giving rise to such causes of action or claims and which necessitated such hospital care, treatment and maintenance.

*Id.* at 43 (quoting Tenn. Code Ann. § 29-22-101(a)) (emphasis added). The Tennessee Supreme Court interpreted this statute with the following explanation:

By its plain terms, this language limits the application of the lien to "all reasonable and necessary charges for hospital care, treatment and maintenance of ill or injured persons." A hospital's charges and a patient's debt are two sides of the same coin. After all, a debt is nothing more than charges that have not been paid. Thus, our first task is to determine what "all reasonable and necessary charges for hospital care, treatment and maintenance of ill or injured persons" includes.

The debt the patient owes to the hospital must be based on "reasonable and necessary charges." Tenn. Code Ann. § 29-22-101(a). The concept of "reasonable and necessary" medical expenses is well known to the bench and bar. Employees who sustain work-related injuries are entitled to have their employer pay the "necessary and reasonable medical expenses" arising from the injury. *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 537 (Tenn. 2006); *Moore v. Town of Collierville*, 124 S.W.3d 93, 99 (Tenn. 2004). Similarly, recoveries for medical expenses in personal injury cases are limited to those expenses that are "reasonable and necessary." *Roberts v. Davis*, No. M2000-01974-COA-R3-CV, 2001 WL 921903, at *4 (Tenn. Ct. App. Aug. 7, 2001) (No Tenn. R. App. P. 11 application filed). Finally, among the categories of damages that can be awarded in health care liability actions is the "cost of reasonable and necessary medical care." Tenn. Code Ann. § 29-26-119 (2012).

In these contexts, and in the context of the HLA, "necessary" limits the charges to the cost of the medical care that was or will be required to treat the injury. *Street v. Levy (Wildhorse) Ltd. P'ship*, No. M2002-02170-

9

COA-R3-CV, 2003 WL 21805302, at *4 (Tenn. Ct. App. Aug. 7, 2003) (No Tenn. R.App. P. 11 application filed); *see also Sibbing v. Cave*, 922 N.E.2d 594, 604 (Ind. 2010). There is no indication in this record that the parties disagreed with regard to the necessity of the medical services the [hospital] provided to [the plaintiffs]. Accordingly, for the purpose of this opinion, we deem the medical services provided to [the plaintiffs], and therefore the medical charges, necessary.

There is likewise no indication that the parties disagreed that the medical services the [hospital] provided to [the plaintiffs] were reasonable, in the sense that they were proportionate to the injuries [the plaintiffs] sustained. However, the record does reflect that the parties disagreed about the reasonableness of the amount of the [hospital's] charges for these services. This is understandable because the [hospital] had two versions of its costs—one for [the plaintiffs] and their insurance companies and another for the lien and the third-party tortfeasor. Accordingly, we must decide which version of the [hospital's] costs is the reasonable cost for the purpose of Tenn. Code Ann. § 29-22-101(a).

The presumption in Tenn. Code Ann. § 24-5-113(a)(1) (2000) that itemized medical bills are necessary and reasonable does not apply to this case. That presumption applies only to personal injury actions brought in any court by injured parties against the persons responsible for causing their injuries. Tenn. Code Ann. § 24-5-113(a)(2). In addition, the presumption does not apply when the total cost of the medical bills exceeds $4,000. Tenn. Code Ann. § 24-5-113(a)(3). The claims made by [the plaintiffs] are not personal injury claims against the persons who caused their injuries, and the amount of each claim exceeded $4,000. Accordingly, we must assess the reasonableness of the [hospital's] charges without the presumption that they are reasonable.

The [hospital's] non-discounted charges reflected in the amount of the liens it filed against [the plaintiffs] should not be considered reasonable charges for the purpose of Tenn. Code Ann. § 29-22-101(a) for two reasons. First, the amount of these charges is unreasonable because it does not "reflect what is [actually] being paid in the market place." Because "virtually no public or private insurer actually pays full charges[,] ... [a] more realistic standard is what insurers actually pay and what the hospitals [are] willing to accept." *See also Howell v. Hamilton Meats & Provisions*, Inc., 52 Cal.4th 541, 129 Cal.Rptr.3d 325, 257 P.3d 1130, 1144 (2011) (noting that "a medical care provider's billing price for particular services is not necessarily representative of either the cost of providing those services or their market value"); *Provena Covenant Med. Ctr. v. Department of*

*Revenue*, 236 Ill.2d 368, 339 Ill. Dec. 10,925 N.E.2d 1131, 1150 (2010) (noting that the hospital's "established" rates were more than double the actual costs of the care).

The second basis for concluding that the [hospital's] non-discounted charges are not reasonable stems from its contracts with [the insurers]. The [hospital] furthered its own economic interest when it agreed in these contracts to discount its charges for patients insured by [the insurers]. *Howell v. Hamilton Meats & Provisions, Inc.*, 129 Cal.Rptr.3d 325, 257 P.3d at 1144 (noting that "[i]nsurers and medical providers negotiate rates in pursuit of their own business interests"); see also *Palmyra Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1295 (11th Cir. 2010) (noting that hospitals enter into contracts with private insurers expecting an increase in the number of the insurer's policy holders as patients); *Galvan v. Northwestern Mem'l Hosp.*, 382 Ill.App.3d 259, 321 Ill.Dec. 10,888 N.E.2d 529, 538-39 (2008) (noting that a hospital's contract with an insurer benefits the hospital because payment is guaranteed).

We have already held that persons insured by an insurance company are intended third-party beneficiaries of the contract between their insurance company and a hospital. *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 620 (Tenn. 2004). Thus, with regard to an insurance company's customers, "reasonable charges" are the charges agreed to by the insurance company and the hospital. *Nishihama v. City & Cnty. of San Francisco*, 93 Cal.App.4th 298, 112 Cal.Rptr.2d 861, 867 (2001); *Hoffman v. Travelers Indem. Co. of Am.*, 2013–1575, p. 10 (La. 5/7/2014); 144 So.3d 993, 1000. The [hospital's] contract with [the insurers] defined what the reasonable charges for the medical services provided to [the plaintiffs] would be.

*West*, 459 S.W.3d at 43-46 (footnotes omitted). In a footnote within this section, the supreme court further noted:

Just months ago, the Supreme Court of West Virginia upheld a damages award based on the hospital's posted costs rather than on the actual amount that the hospital accepted in full payment for the services it provided. *Kenney v. Liston*, 233 W.Va. 620, 760 S.E.2d 434, 440 (2014). Justice Loughry noted in dissent:

Given the current complexities of health care pricing structures, it is simply absurd to conclude that the amount billed for a certain procedure reflects the "reasonable value" of that medical service. Like retailers who raise the price of

11

their goods by twenty-five percent before having a ten percent off sale, medical providers utilize the same sort of tactic to ensure a profit. In fact, "[b]ecause so many patients, insured, uninsured, and recipients under government health care programs, pay discounted rates, hospital bills have been called 'insincere,' in the sense that they would yield truly enormous profits if those prices were actually paid."

*Kenney v. Liston*, 760 S.E.2d at 451 (Loughry, J., dissenting) (quoting *Howell v. Hamilton Meats & Provisions, Inc.*, 129 Cal.Rptr.3d 325, 257 P.3d at 1142).

*Id.* at 45 n.14.

### D. The Application of West

Defendants argue that the *West* decision now controls the definition of reasonable medical expenses in personal injury litigation. They claim that the court "made a purposeful choice of words" in referencing the familiarity of the bench and bar with the concept of reasonable charges and in noting that recovery for medical expenses in personal injury cases is also limited to expenses that are "reasonable and necessary." They also note that the supreme court cited approvingly the *Howell* case in which the Supreme Court of California considered the concept of reasonable medical expenses in the context of personal injury litigation. The court also cited the dissent in *Kenney*. Thus, Defendants claim that, by citing these cases, the supreme court in *West* "specifically contemplate[d]" the use of its definition of reasonable medical expenses in tort litigation. Plaintiff, however, claims that the *West* decision only defined reasonable medical charges for the purposes of the Hospital Lien Act.

Tennessee trial courts have reached opposite conclusions as to the impact of *West* on Tennessee tort law. According to the parties' submissions on appeal, four Tennessee trial courts have interpreted *West* narrowly as applying only within the context of the Hospital Lien Act, while four others have interpreted it broadly as also defining the concept of reasonable medical expenses in personal injury litigation. At least three federal district court opinions have interpreted *West* as defining the standard of reasonableness for medical expenses in personal injury litigation. *See Smith v. Lopez-Miranda*, No. 15-CV-2240-SHL-DKV, 2016 WL 1083845, at *1-3 (W.D. Tenn. Feb. 10, 2016); *Hall v. USF Holland, Inc.*, No. 2:14-CV-02494, 2016 WL 361583, at *2 (W.D. Tenn. Jan. 12, 2016); *Keltner v. U.S.*, No. 2:13-CV-2840-STA-DKV, 2015 WL 3688461, at *3-5 (W.D. Tenn. June 12, 2015).

Having carefully reviewed the *West* opinion, we must agree with Plaintiff on this issue. The supreme court in *West* said "we must decide which version of the [hospital's] costs is the reasonable cost *for the purpose of* Tenn. Code Ann. § 29-22-101(a)." 459 S.W.3d at 44 (emphasis added). That was the issue before the court and the one it resolved. The court concluded that "[the hospital's] non-discounted charges . . . should not be considered reasonable charges *for the purpose of* Tenn. Code Ann. § 29-22-101(a)[.]" *Id.* (emphasis added). We reject any assertion that the supreme court meant for its holding in *West*, standing alone, to control all determinations of reasonableness with regard to medical expenses under Tennessee law. In fact, the supreme court cautioned that "[n]othing in this opinion should be construed to apply to hospital liens filed against patients who are TennCare enrollees." *Id.* at 39 n.2. If the court did not intend for its opinion to apply to hospital liens in all circumstances, surely the court did not intend for its opinion to be binding as to all determinations of reasonable medical expenses under Tennessee law.

Aside from our conclusion regarding the *direct* holding of *West*, Defendants and their amicus supporter essentially urge this Court to extend the reasoning of *West* to personal injury litigation. They claim that it is illogical to conclude that a plaintiff can recover a negotiated price differential as a "reasonable medical expense," even if the plaintiff never incurred the expense, while the hospital that actually provided the medical care is prohibited from pursuing the same amount through a hospital lien. This appears to be the approach taken by the trial judge, as he said, "I cannot imagine that [the supreme court] would use any other logic in this situation than they used in [the *West*] situation." That may be true. The Tennessee Supreme Court may very well consider this issue and decide that the same reasoning it employed in *West* in the context of the hospital lien statute should apply to personal injury cases. It may not. In the absence of any such ruling, however, it is not the role of *this* Court to overturn or overlook existing caselaw based on speculation about whether the supreme court would extend the reasoning of *West* to this situation.

As noted earlier in this opinion, under Tennessee law as it currently exists, "[d]amages in personal injury cases are not measured by 'fixed rules of law' but rest[] largely in the discretion of the trier of fact." *Roberts*, 2001 WL 921903, at *4. According to the Tennessee Supreme Court, "[i]n all but the most obvious and routine cases, plaintiffs must present competent expert testimony" to prove that the medical expenses he or she is seeking to recover are necessary and reasonable. *Borner*, 284 S.W.3d at 218. "A physician who is familiar with the extent and nature of the medical treatment a party has received may give an opinion concerning . . . the reasonableness of the charges." *Long*, 797 S.W.2d at 893; *see also Wells ex rel. Baker v. State*, 435 S.W.3d 734, 742 (Tenn. Ct. App. 2013) (quoting *Long*); *Roberts*, 2001 WL 921903, at *4

13

("physicians familiar with the extent and nature of the plaintiff's medical treatment can give an opinion regarding the reasonableness of the physician's services and charges").

Defendants' proposed expansion of *West* would create a new system that allows the amount accepted by medical providers in satisfaction of the bills to be deemed reasonable *as a matter of law*. For example, according to Defendants, Plaintiff should not be allowed to introduce proof of any medical expenses in excess of the amount accepted as payment in full by her medical providers. Thus, Defendants' proposal would require *exclusion* of a physician's testimony that the amount of charges billed represents a reasonable value. Such an approach is incompatible with the standards set forth in existing Tennessee caselaw. For instance, *Long* clearly recognizes that a physician may give an opinion concerning the reasonableness of medical charges. It is controlling on this Court until reversed or modified. *See* Tenn. R. Sup. Ct. 4(G)(2) ("Opinions reported in the official reporter [] shall be considered controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction.").

We recognize Plaintiffs' argument that Defendants are barred from introducing evidence of any discounted medical bills based on this Court's decision in *Fye v. Kennedy*, 991 S.W.2d 754 (Tenn. Ct. App. 1998). *Fye* was a wrongful death case arising out of an auto accident. *Id.* at 756. The trial judge allowed the plaintiff to present evidence of a medical bill reflecting total charges in the amount of $748,384.08 despite the defendant's argument that the plaintiff should have been limited to proving $75,264, the portion of the bill actually paid by Medicaid. *Id.* at 762. Although the parties did not cite any statutory, regulatory, or contractual basis for it, "the balance of the bill was, in some way, legally forgiven." *Id.* The court of appeals defined the issue as "whether, since the balance of the bill was forgiven, the plaintiff is entitled to recover the fair value of the services rendered as opposed to the actual amount paid by Medicaid." *Id.* The defendants argued that because $673,120.08 of the bill was forgiven, that portion of the bill should be treated "as no bill at all rather than as an expense." *Id.* at 763. The court discussed the right of an injured party to recover "reasonable and necessary" medical expenses and the application of the collateral source rule.[8] *Id.* The court explained that "[i]n Tennessee, the focus has always been on the 'reasonable' *value* [of the] services rendered." *Id.* at 764. The court compared the bill forgiveness to a gratuity from a collateral source and concluded that the jury was not entitled to know about the portion of the bill that was not actually paid. *Id.*

---

[8]Under the collateral source rule, "benefits received by a plaintiff from a source wholly independent of and collateral to the tortfeasor, as a result of the injury inflicted, will not diminish the damages otherwise recoverable from the defendant." *Nance by Nance v. Westside Hosp.*, 750 S.W.2d 740, 742 (Tenn. 1988).

14

Although the *Fye* case is factually similar to the scenario we are considering on appeal, the *Fye* court was not asked to consider the precise issue now before us. In its discussion, the *Fye* court expressly noted that a defendant is permitted to introduce relevant evidence regarding the reasonableness of a medical expense, and the court pointed out that, in the case before it, "[t]here [was] no suggestion that the hospital bill for $748,384.08 [was] other than 'reasonable.'" *Id.* at 764. As the full amount of the medical bill was concededly necessary and reasonable, the court concluded that the jury was entitled to consider the full amount of the bill rather than the lesser amount paid by Medicaid.[9] *Fye* does not control the issue of whether the amount accepted by a medical provider bears on the *reasonableness* of the medical expense.[10] We also find *Fye* distinguishable because of the nature of the bill reduction in that case. In *Fye,* the hospital submitted the bill to Medicaid with the understanding that it would not seek to recoup the balance, beyond what Medicaid paid, from the patient or any other source. Because the parties did not present the Court with any statutory, regulatory, or

---

[9]We note that Judge Goddard disagreed with the majority and wrote the following in his dissent:

> I concur in all of the issues addressed in the majority opinion except the one questioning the Trial Court's permitting the Plaintiff to prove the entire bill from Erlanger Medical Center.
> I recognize that Judge Susano has set out considerable authority to support the position reached by the majority. However, it appears this is a question of first impression in Tennessee and I cannot concur that the law should enable an injured plaintiff to be able to prove and, presumably, recover monetary damages for medical expenses which he has in fact not incurred, much less paid or became obligated to pay.
> Assume, for instance, that in the case at bar the deceased had only received a relatively minor injury from which she fully recovered. However, the cost of her treatment and convalescence totaled $250,000, but she was only charged and obligated to pay the sum of $2500. Would she then be entitled to prove the $250,000 as a part of her damages? I think not. In my view, fundamental fairness requires a different resolution than that reached by the majority opinion.
> I would hold that the introduction of the Erlanger bill was prejudicial error and . . . . remand the case for trial as to liability and damages, which would include only those medical bills which were paid or there was an obligation to pay.

*Fye*, 991 S.W.2d at 765.

[10]This Court also considered the issue of discounted medical expenses in a personal injury action in *Bowers by Bowers v. City of Chattanooga*, 855 S.W.2d 583, 586 (Tenn. Ct. App. 1992). The plaintiff was awarded as damages $26,801.16, representing medical expenses he testified he incurred as a result of an accident involving his son. *Id*. at 584. The defendant asserted that the plaintiff was only entitled to compensation for his actual out-of-pocket expenses, which amounted to $600, as the balance of the expenses incurred was paid by the plaintiff's health insurance. *Id*. at 586. The court of appeals concluded that the difference in expenses was "a matter between [the plaintiff] and his insurance company" from which the defendant "should not benefit." *Id.* at 587. Therefore, the full award of $26,801.16 for medical expenses was affirmed. *Id.* Again, however, the court did not consider any argument regarding the reasonableness of the medical expenses.

15

contractual basis for the forbearance, the Court concluded that the balance of the bill was "in some way, legally forgiven," and essentially a gratuity. The Court went on to discuss the collateral source rule as it relates to gratuitous benefits and/or gratuitous medical care. However, the case before us does not involve a *gratuitous* benefit or discount, so the Court's analysis is not controlling on whether the collateral source rule applies to discounted medical bills paid pursuant to a contract with a private insurer. In sum, under the law as it presently exists in Tennessee, a plaintiff may present the testimony of a physician who testifies that the amount of medical expenses billed or charged to a plaintiff was reasonable. That is precisely what Plaintiff did in this case. As the expert's testimony was admissible, its exclusion was improper. However, existing law in this state also makes clear that Defendants are permitted to offer proof contradicting the reasonableness of the medical expenses. *See Borner*, 284 S.W.3d at 218. However, in doing so, they must not run afoul of the collateral source rule. *See, e.g., Martinez v. Milburn Enters., Inc.*, 233 P.3d 205, 222-223 (Kan. 2010) ("… the collateral source rule bars admission of evidence stating that the expenses were paid by a collateral source. However, the rule does not address, much less bar, the admission of evidence indicating that something less than the charged amount has satisfied, or will satisfy, the amount billed."); *see also Stanley v. Walker*, 906 N.E.2d 852, 858 (Ind. 2009). If the Tennessee Supreme Court is inclined to extend the reasoning of *West* to personal injury litigation as Defendants suggest, it is, of course, certainly free to do so, but this Court must apply the law as it currently stands. We sincerely hope that the Tennessee Supreme Court will review this case and consider the excellent arguments presented by both the parties, the amici curiae on appeal, and the concurring opinion.

## V. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby reversed and remanded for further proceedings. Costs of this appeal are taxed to the appellees, Debbie Steelman and Danny Cates, Sr., as co-representatives of the Estate of John T. Cook, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE

16